D. T. MOORE, Trustee, v. WILLIAM HINNANT and others.

*Deed, operative between the parties—Fraud and Fraudulent Conveyances.*

1. A deed of trust was executed to secure creditors (naming them), and authorized the trustee to divide the proceeds of the sale of property conveyed *pro rata* "amongst the said subscribing creditors, parties of the third part," but it was signed only by the trustor and trustee, and the trust accepted by the latter; *Held,* that the deed is binding on those who executed it, although it appeared that when it was drawn the secured creditors should also sign, and the same was properly admitted to probate and registration.

2. A deed is in law fraudulent upon its face, and so to be declared by the court, when a purpose appears to secure a benefit to the maker or to defraud creditors. And the court will also declare it to be so, where a fraudulent intent (the essential vitiating element) is found as a fact by the jury. But if the sole purpose of the maker be to discharge an honest debt, the deed does not fall within the operation of the statute of fraudulent conveyances.

(*Hafner* v. *Irwin,* 1 Ired., 490; *Dukes* v. *Jones,* 6 Jones, 14, cited, distinguished and approved).

CONTROVERSY submitted without action and heard at Spring Term, 1882, of JOHNSTON Superior Court, before *Shipp, J.*

One H. L. Watson being indebted to divers persons in various amounts, executed a deed of trust to the plaintiff, dated November 28th, 1881, conveying all his "merchandise, wares

and stock in trade, and all money due or coming to him on mortgages, bonds, notes, book accounts, to have and to hold unto the said trustee upon the trust following, viz.: In trust to sell and dispose of the goods, &c., at public or private sale at the trustee's discretion, and to collect all the sums of money aforesaid and divide the whole proceeds and collections, after deducting usual charges, amongst the said subscribing creditors of the third part, in proportion to their respective debts."

The deed recites that it is made between "H. L. Watson of the first part, D. T. Moore (trustee) of the second part, and the creditors each and every one (names and residences of a great number being set out), and any and all creditors who may have been overlooked, as parties of the third part, witnesseth," &c.; and was signed and sealed only by H. L. Watson and D. T. Moore. It was admitted to probate on the 9th of December, 1881, and registered on the following day. The plaintiff accepted the trust and took possession of the property conveyed.

After the registration of the deed, some of the creditors sued out attachments against the trustor, upon the ground that he had left the state to avoid the service of process, and placed the warrants in the hands of the defendant, who, by virtue thereof, seized and took from the plaintiff the property conveyed in the trust deed. The debts of the attaching creditors (who were made parties defendant) are of sufficient amount to absorb the property. The other facts stated in the case are not necessary to an understanding of the points decided by this court.

The question submitted to His Honor in the court below was, whether the deed of assignment is a valid instrument, complete in itself, and effectual in transferring Watson's title to the property to Moore, at or before the levy of the attachments?

His Honor held that there was nothing upon the face of the deed which suggested fraud, or which would authorize a court to declare it void; that the object was to convey property to a trustee to pay all the trustor's debts *pro rata*, without any reservation for the benefit of the debtor; that while the debtor

might have contemplated the signing by the creditors, yet such signing was not necessary under the facts of this case, and the validity of the deed is not affected by their failure to sign it; and that the deed was sufficient to pass the title to the property to the trustee. Judgment accordingly, and the defendants appealed.

*Messrs. Battle & Mordecai* and *Reade, Busbee & Busbee,* for plaintiff.

*Messrs. MacRae & Strange* and *T. M. Argo,* for defendants.

SMITH, C. J. The result of the action depends upon the determination of the inquiry as to the validity of the deed in trust under which the plaintiff claims title to the goods. The appellant presents objections to the legal efficacy of the conveyance, which may be resolved into the following:

1. The deed, indicating upon its face the intended execution of creditors, is imperfect and inoperative.

2. It is fraudulent and void upon the facts agreed and set out.

3. The further execution by creditors being necessary to complete the instrument, the registration is of a part of it only, and not in accordance with the requirements of the statute.

It is to be remarked in noticing these several exceptions, that the facts stated constitute the whole case upon which judgment is to be rendered, and as none can be withdrawn, so none can be added thereto, from which other facts may be inferred.

The deed, notwithstanding the imperfections which appear to indicate an intention that all the secured creditors were to become parties by their several signatures in order to its completion, was, in fact, in its present form and without further signing, delivered by the maker to the assignee and accepted by the latter, as the act and deed of the former; and, as such, proved and registered. This rendered it obligatory and effectual between these parties, and they assenting thereto, its efficacy cannot be impeached by the attaching creditors. This proposition, reasonable in itself, is fully supported by authority.

In *Jackson* v. *Stamport*, 19 Ga., 14, where the purchaser at an execution sale sought to intervene in a foreclosure proceeding and defend his own title by assailing the mortgage, which in its body purported to be executed by two persons, while in fact it was executed by only one of them, LUMPKIN, J.; in refusing the application, uses this language: "That the form of the instrument may be suggestive of the fact that it never was finally executed, and might be relied on as evidence to support a plea by the party to that effect, I can readily understand; but that it should render the deed absolutely void, cannot be maintained."

So, when a similar objection was made to the sufficiency of the deed when offered in evidence, the supreme court of California held it to be untenable, and said: "The deed shows clearly, upon inspection, that several of the persons named in the body of the instrument signed their names to it; and to that extent at least it was executed and properly admissible in evidence. This objection was made to a similar deed in the case of *Cotten* v. *Seavey*, 22 Cal., 496, and was overruled." *Tuston* v. *Faught*, 23 Cal., 237.

In *Scott* v. *Whipple*, 5 Greenl., 336, the principle was declared applicable to a covenant executed by some only of the persons named in the body of it, who delivered it, and it was accepted by the covenantee, in that form and condition, as a complete instrument.

The result may be thus stated: If the deed is delivered with intent to operate as to those who do execute it in its present condition, and be binding upon them, although it had been understood when the deed was drawn that the others named were also to execute it, the instrument is effectual and operative, and its provisions binding upon such as execute. In other words, the deed operates as far as it can upon such.

2. The fraudulent intent which vitiates the conveyance is as truly a fact itself as those facts which are stated in the case, and afford ground for an inference of its existence. A deed is in

law fraudulent upon its face, and so to be declared by the court, when a purpose appears to secure a benefit to the assignor, or to delay or defraud creditors, and the assignment is the means employed to this end. It is also to be adjudged when the fraudulent intent is found to exist, as a fact, deduced from other facts and declarations preceding or accompanying the transaction.

The statute avoids, on behalf of creditors, alienations "contrived and devised of fraud to the purpose and intent to delay, hinder and defraud creditors and others of their just and lawful actions and debts," and declares that all such alienations made "to or for any intent of purpose" theretofore mentioned, "shall be void against such creditors and others." Bat. Rev., ch. 50, §1; 13 Elizabeth.

The *intent* is the essential and poisonous element in the transaction, and not merely the effect; since in every conveyance and appropriation of property the property conveyed is placed beyond the creditor's reach, and he is so far obstructed in the pursuit of his remedy against the debtor's estate. But the inquiry is, was this the purpose of the assignment; and if so, and it was participated in by the assignee or party to take benefit under it, the assignment is invalid, though the debt or liability professed to be the object to be secured be *bona fide* due, and itself tinged with no vicious ingredient.

In the language of LORD ELLENBOROUGH in *Mieux* v. *Howell*, 4 East., 1–13: "The act of parliament" (and ours conforms to it) "was meant to prevent deeds, &c., *fraudulent in their concoction*, and not merely such as in their effect might delay or hinder other creditors."

The principle is reiterated and enforced in interpreting the statute substantially similar in the following cases: *Wilder* v. *Winne*, 6 Cowan, 284; *Farmer's Bank* v. *Douglass*, 13 Smed. & Marsh., 22; *Dance* v. *Seaman*, 11 Grattan, 778; *Bellamy* v. *Bellamy*, 6 Fla., 62; *Hollister* v. *Land*, 2 Mich., 309; *Church* v. *Drummond*, 7 Ind., 17; *Hoffman* v. *Mackall*, 5 Ohio, 124, and in decisions in other states.

It is stated in emphatic terms by GASTON, J., delivering the opinion in *Hafner* v. *Irwin*, 1 Ired., 490, thus: "Every conveyance of property by an insolvent or embarrassed man, to the exclusion of the claims of some of his creditors, has necessarily a tendency to defeat or hinder his other creditors in the collection of their demands. But if the sole purpose of such a conveyance be the discharge of an honest debt, it does not fall under the operation of the statute of fraudulent conveyances."

" It is clear, however, from the language of the statute of 13 Elizabeth," remarks a recent author after a full discussion of the subject, and as his conclusion from a review of adjudged cases, "that its provisions were directed exclusively against *conveyances made with an actual intent* on the part of the debtors to hinder, delay or defraud creditors, as distinguished from the mere effect or operation of such conveyances. The expressions in the preamble, '*devised and contrived*,' to the end, purpose and intent, &c., leave no room for doubt on this point. Hence it has been sometimes very expressively designated, as the statute against fraudulent intents in alienation." Burrill on Assign., §332.

As then the fraudulent intent, conclusively inferred from the provisions of the instrument and not open to explanation, or shown *prima facie*, but admitting evidence in rebuttal, or to be drawn from antecedent, attending and subsequent circumstances dehors the instrument, and in the latter case as an independent fact forming an ingredient in the transaction, is a material element not stated in the case, we cannot, from inspection nor by deduction, supply the omission and pronounce the instrument void for that reason.

3. The next inquiry is as to the sufficiency of the registration of the deed in its present form.

It is insisted that the instrument is incomplete in the absence of the contemplated execution by the creditors for whose security only the property is conveyed, and the registration is consequently inoperative, upon the authority of *Dukes* v. *Jones*, 6 Jones, 14.

We do not admit the force of the objection, and are at a loss to find any part of the agreement left out of registration. Between these parties, it is accepted as a complete instrument, and is in law such.

As the assignor and the assignee could have stricken out all words looking to the signing by others, so they may make it effectual in its present form between themselves. This they have undertaken to do, and in our opinion, under the cases cited, they had the right to do. If it can operate as a conveyance, it will be allowed to do so, and the signatures of creditors would not have affected in any degree the operation of the deed. It would only signify their assent and acceptance of its provisions.

4. The remaining point to be considered is as to the construction of the conveyance, and to ascertain if any effectual trust has been declared to uphold the plaintiff's title.

From an inspection of the instrument, its obvious purpose is to secure all the creditors of the assignor, in the ratio of their respective demands. A large number of these and their places of residence are mentioned by name, and then it is added, "and any and all creditors which have been overlooked" who are, with those specially designated, to constitute the "parties of the third part." As the scope of the trust is commensurate with the assignor's indebtedness, all must share *pro rata* in the trust, or none can take. The trustee is directed "to divide the whole proceeds and collections after deducting usual charges *among* the said subscribing creditors of the third part in proportion to their respective debts." If putting the signatures to the instrument is an indispensable prerequisite to any participation in the fund to be distributed, then as none have subscribed, none can come in and take a benefit under the deed.

In our opinion, the consummation of the conveyance by delivery without the creditors' signatures did in fact, and was so intended, dispense with those subscriptions, and the inadvertent retention of the participle in providing for the distribution and describing the beneficiaries, does not defeat the assignment, nor

its designed practical results. The creditors, a very large number, are mentioned by name and residence, and then following is the sweeping clause that takes in all who are unremembered; and that word, in order to give effect to the general purpose of the parties, must be rejected as repugnant and as a variance with the other language directing a division "amongst the said" (that is, enumerated) subscribing creditors, none having in fact then signed.

The maxim "*res magis valeat quam pereat*" forcibly applies to protect the assignment from what might otherwise be fatal to its efficacy. This method of interpretation is not only sanctioned by the words of the deed, but is supported by the further fact that the creditors, scattered in remote places, and some entirely unknown and equally included in the scope of the trust, could not be expected to sign, and some could not possibly sign in any reasonable time before probate and registration. The only alternative to an absolute annulling of the deed is an interpretation that rejects the qualifying participle as incompatible with the general purpose and structure of the instrument in its adopted form, or gives to it the meaning of assenting, of which the assigning would be proof, and thus to let in all the creditors to a share of the fund.

We must, therefore, uphold the deed upon the facts stated, and affirm the ruling of His Honor in this regard.

No error. Affirmed.