S. M. BEASLEY v. W. H. BRAY and others.

*Evidence—Fraud—Fraudulent Conveyances—Issues.*

1. An insolvent owner of property may dispose of it by sale or convey-
   ance to secure a present indebtedness, if such disposition is not made
   with intent to hinder, delay or defraud his creditors. The presence
   of such intent in the *vendor* alone is sufficient to avoid the transac-
   tion.

2. If the conveyance be *absolute* the fraudulent intent must be known
   to and participated in by the *vendee* as well as the vendor.

3. Where the fraudulent purpose is apparent in the conveyance itself,
   the Court adjudges the fact without the intervention of the jury;
   but where it is to be deduced from surrounding circumstances, it
   must be ascertained by the jury upon a proper issue submitted to
   them.

4. An absolute conveyance by an insolvent debtor to an insolvent vendee,
   who has no knowledge of the vendor's embarrassments and is not
   fixed with a fraudulent intent, upon a long credit, is not *per se* void,
   though these facts may be evidence of fraud to be considered by the
   jury.

(*Savage* v. *Knight*, 92 N. C., 497: *Lassiter* v. *Davis*, 64 N. C., 500; *Reiger*
v. *Davis*, 67 N. C., 190; *Hodges* v. *Lassiter*, 96 N. C., 351; *Moore* v.
*Hinnant*, 89 N. C., 459: cited and approved).

CIVIL ACTION, tried before *Avery, Judge,* at Spring Term,
1887, of CURRITUCK Superior Court.

One A. B. Williams, conducting a mercantile business at
Poplar Branch, in Currituck county, in February, 1885, sold
his remaining stock of goods to the plaintiff, then just be-
come of age, and who had been for three years preceding in
his service as clerk, at the price of three thousand three hun-
dred and fifty dollars. As a means of payment the plaintiff
executed three notes, two in the sum of one thousand dol-
lars each, payable in one and two years, and the other for
the residue of the purchase money at three years, all bear-
ing interest from date. At this time the plaintiff's entire

property consisted in a horse and dog-cart worth $215, and a balance of $65 due for services as clerk, which was credited upon the first maturing note. No other money was paid at the time, but the plaintiff made payments during the period preceding the committing of the alleged trespasses by the defendants, amounting in the aggregate to about $500.

The said Williams had become indebted to the defendants Adelsdorf & Bros. and Washington, Taylor & Co.. as well as to others, and had, after the sale, no more personal property than would be required to be exempt, and had a tract of land under mortgage beyond its value, as was ascertained by a subsequent sale.

The defendant Bray, sheriff, with executions in his hands in favor of the other defendants, at their instance and under an indemnity given by them, in May following the sale, the plaintiff having been meanwhile in possession and disposing of the goods as his own, entered the store against the will of the plaintiff and in disregard of his protest, seized and removed the goods on hand, which he afterwards sold and applied the proceeds to said executions.

The present action was instituted on the first day of the succeeding month against Bray and three others, as to whom a *nol. pros.* (not a *nonsuit* as the record erroneously calls it) was afterwards entered, and the creditor defendants were permitted on their own application to become associate parties and defend in the action.

The action is to recover in damages the goods so seized and converted to the defendants' use, and the answers allege the sale to the plaintiff to have been fraudulent and void as against themselves as creditors, and thus the validity of the conveyance is the sole matter in controversy.

At the close of the testimony the Court caused eight issues to be submitted to the jury (to all of which, except the first, second and eighth, the plaintiff objected,) which issues, with the responses thereto, are as follows:

1. Was A. B. Williams insolvent at the time of the sale of the goods in controversy by him to S. M. Beasley? Answer. Yes.

2. If Williams was insolvent, did Beasley know he was insolvent at the time of the sale? Answer. No.

3. Was Williams then embarrassed with debts, and had he been sued or threatened with suits by creditors? Answer. Yes.

4. Did the plaintiff at the time of the sale know of Williams' embarrassment from debts and his being threatened with suits? Answer. No.

5. Did plaintiff have reasonable grounds to believe or suspect that Williams was so embarrassed and threatened when he bought, and could he by inquiry have ascertained the truth in reference to William's financial condition? Answer. Yes.

6. Was plaintiff insolvent at the time of sale? Answer. Yes.

7. Did Williams know this fact? Answer. Yes.

8. What is plaintiff's damages? Answer. $200.

In place of the five issues to which exception was taken, the plaintiff proposed one in these words:

"Did A. B. Williams sell his stock of goods to S. M. Beasley (the plaintiff) with the fraudulent intent to hinder, delay and defeat his creditors, and did the plaintiff purchase, knowing the facts, and participating in the fraudulent intent?"

This was refused and exception taken to the ruling.

The plaintiff further asked that instructions be given to the jury in these terms:

"1. If Williams was insolvent at the time of the sale to Beasley, and intended to hinder, delay or defraud his creditors in the sale, still if the latter knew nothing of such intent at the time and bought the stock of goods in good faith, then he would not be guilty of any fraud and the sale would be valid,

notwithstanding he paid no cash, but gave his individual note for the purchase money."

" 2. If the jury find the conveyance was absolute and for a valuable consideration, it is valid, and operates to pass the title, unless it was the fraudulent intent and purpose of Williams, in its execution, to defeat his creditors in the collection of their claims, or to hinder or delay them in the same, the plaintiff knowing the facts and participating in the fraudulent intent."

" 3. There is no evidence that Williams was threatened with suit until after the sale in February."

These instructions were also refused and exception taken to the ruling.

The Court, after verdict, refused the plaintiff's motion for judgment on the finding in his favor, and adjudged that the defendants go without day and recover their costs.

After an ineffectual motion for a new trial the plaintiff appealed.

*Mr. E. F. Aydlett*, for the plaintiff.
*Mr. John Gatling*, for the defendant.

SMITH, C. J., (after stating the case). There is no finding of a fraudulent intent in the making the sale, as there is none apparent in the transaction considered by itself and divested of attending incidents.

An insolvent owner of property has the same right as one who is solvent, to dispose of it by a sale or conveyance to secure a present indebtedness, in the absence of an operating bankrupt act, when done *bona fide* and not with the covinous purpose of hindering or defrauding creditors, and the presence of such purpose alike vitiates and avoids the conveyance made by either. When the vitiating intent appears in the instrument itself, the Court ascertains and adjudges the fact, and no jury finding is necessary. But when the fraud is

to be inferred from surrounding circumstances, and is not an element in the transaction, it must be found by a jury, and upon a proper issue framed to raise the enquiry. This is the settled construction of the statute of the 13th Elizabeth, whose terms ours essentially pursues, as will be seen by some adjudications of late date to which we shall refer.

"It is the intent and purpose existing in the mind of the insolvent debtor," remarks ASHE, J., in *Savage* v. *Knight*, 92 N. C., 497, " at the time of making the assignment, to delay, hinder, defraud and defeat his creditors, that vitiates his assignment and makes it void," to which we subjoin the qualification that if the conveyance be absolute the vendee must participate in the fraud, for the contract is the act not of one but of both the parties. READE, J., in *Lassiter* v. *Davis*, 64 N. C., 500, and BOYDEN, J., in *Reiger* v. *Davis*, 67 N. C., 190, so in *Hodges* v. *Lassiter*, decided at last term, the Court say : " As the question of the presence of an infecting element of fraudulent intent in making the assignment is *one of fact*, it was properly left to the jury to find upon the evidence and to deduce from it. What constitutes fraud is matter of law ; what is sufficient evidence of the facts required to establish it, it is for *the jury to find.* When the fraud appears upon the face of the assignment, it is so declared by the Court. When dependent upon external proofs, it is to be found by the jury."

But the subject is more fully discussed and the true principle announced in *Moore* v. *Hinnant*, 89 N. C., 459, 460, in a quotation from Burrill on Assignments, § 332, in these words: " It is clear, however, from the language of the statute, 13 Elizabeth, that its provisions were directed exclusively against *conveyances made with an* actual intent on the part of the debtors to hinder, delay or defraud creditors, as distinguished from the mere effect or operation of such conveyances. The expression in the preamble " *devised and con-*

*trived,* to the end, purpose and intent," &c., leave no room for doubt on this point."

Hence it has been sometimes very expressively designated as the statute against "fraudulent intents in alienations"

The Court therefore committed error in not submitting an issue as to the intent to the jury, which they, not the Court, must draw in ascertaining the presence of fraud.

The Court seems to have acted upon the idea that the law deduced the fraud from the insolvency of the parties and the indulgence allowed for the payments, and that in face of the finding that the plaintiff did not know of Williams' insolvent condition, nor that he was pressed by debts when the sale was made.

We see no reason in law why an insolvent debtor may not sell to another, who, if he has not present means to pay for his purchase, is also free from other debts; the vendor relying upon the integrity and capacity of the vendee to provide those means in time to meet his liabilities.   Indeed, it seems he did, in managing the business, in the course of three months pay half the principal of the first maturing obligation.

But upon these matters it was the province of the jury to pass, and they have not passed nor been permitted to pass upon the material element upon which the validity of the assignment depends.   The case may present strong evidence of fraud, from which the jury might find its existence, but the effect of the evidence itself should have been left to them to determine.   There is error, and the verdict must be set aside and a *venire de novo* awarded.

Error.                                      *Venire de novo.*