W. H. PHIFER, Assignee, v. JNO. R. ERWIN, Adm'r of Marshall E..
Alexander.

*Evidence—Fraud—Intent—Mortgage of Stock of Goods—Sale;
what constitutes.*

1. Where evidence is offered of an act, from which a fraud may be pre-
sumed, the adverse party is entitled to show other acts and declar-
ations connected therewith, in explanation.

2. Where a witness, on his examination upon a second trial, gave his
opinion that the value of the property in controversy was greater
than the amount he had testified to on a former trial; *Held*, that
he might state the reasons for the change, by way of explanation.

3. In questions of unlawful intent, when the facts conclusively show an
illegal purpose, and the party intended to do the act, from which
the consequences inevitably flow, he is held to intend both, and
cannot be heard to the contrary; but when the act and the in-
tent must be alleged and proved, as distinct facts, the inference
of an illegal intent may be repelled by the testimony of the party,
that such intent was not entertained by him.

4. So where a mortgagor of a stock of goods was left in possession of
them, to dispose of them to the best advantage, without any ar-
rangement for the appropriation of the moneys received, it was
competent for him to testify that he had no intent, in making the
mortgage, to defraud his creditors.

5. One taking, by assignment, such mortgage and a note secured by the
same, can testify in his own behalf, that he knew nothing of any
understanding between the parties to the mortgage, that the mort-
gagor was to remain in possession, nor of any purpose on the part
of either to defraud the mortgagor's creditors.

6. To render a conveyance fraudulent, it must be so in its execution,
and a fraudulent use of the property afterwards does not avoid it,
though it furnishes strong evidence of the intent, in making the
conveyance, from which the jury may infer fraud.

7. A charge to the jury, that when one mortgages a stock of goods to
secure a debt, and is permitted to remain in possession of them,
to use them as his own, and sell and replenish the stock, and deal
with them as in ordinary course of business one deals with his
own property, the transaction is fraudulent and void as to credit-
ors, without referring to the intent with which the deed was made,
is erroneous.

8. Our law differs from the civil law, which requires a *fixed price* for the purchase to constitute a *sale;* and with us it is sufficient, if the price is left to be fixed afterwards, by reference to the market value, by a designated person, or in any other way in which it may be ascertained with certainty, especially when there is a delivery of the article.

CIVIL ACTION, tried before *MacRae, J.,* at Fall Term, 1887, of the Superior Court of MECKLENBURG.

On the 25th day of December, 1882, W. H. D. Wager bought a stock of goods from M. E. Crowell, for which he gave his note for $1,910.18, payable on the 20th day of February following, and to secure the same, as also a debt of about $300, due by account, reconveyed the same by deed of mortgage to said Crowell. The latter, on October 10th, 1883, assigned the debt and the mortgage security to the plaintiff.

On October 15th, five days after the assignment, certain creditors of Wager, who had recovered judgment against him in a Justice's Court, caused the same to be docketed in the Superior Court of Mecklenburg, on which executions issued to Marshall E. Alexander, Sheriff of that county, and he seized and sold the goods to satisfy said debts. To recover damages for the conversion, the present action was begun and prosecuted to final judgment, from which the defendant appealed to this Court, and it was reversed, and a new trial awarded. *Phifer* v. *Alexander,* 97 N. C., 335.

The Sheriff having since died, intestate, the present defendant, Erwin, has become a party to the action, as his administrator, and in his stead.

At Spring Term, 1887, of said Superior Court, the cause was again tried before the jury upon issues which, and the responses to each, are as follows:

1. Is the plaintiff the owner of the property described in the complaint? Answer—Yes.

2. Did the defendant's intestate seize and convert it? Answer—Yes.

3. What is the value of it? Answer—$350.

And from the judgment thereon, the defendant again appealed.

*Mr. C. W. Tillett,* for the plaintiff.
*Mr. Platt D. Walker,* for the defendant.

SMITH, C. J., (after stating the case). The controversy is confined to the disputed efficacy of the mortgage executed by Wager to Crowell, which the defendant assails as fraudulent and void, as to the executions sued out against the property of the judgment debtor, in which inquiry the *bona fides* of the assignment does not enter, as there is no judgment upon any indebtedness of Crowell, the assignor, of which his creditors alone can complain.

The only question arises, under the first issue, as to the plaintiff's title, and that depends on the validity of the deed of Wager. Upon the former hearing in this Court, when the mortgage was not copied in the record, as it is not now, though referred to as an exhibit in the case, MERRIMON, J., speaking for the Court, and referring to its absence, says, that, "so far as appears from the pleadings and the evidence, it is not, upon its face, fraudulent, and the jury expressly find that it was not made with the actual intent of the parties to it to defraud the creditors of the mortgagor." The remark is not out of place in the aspect which the case, upon the evidence, now wears, and the *fraudulent intent,* as an outside but coincident fact, must be found by the jury, to render the mortgage deed void, as against the attacking creditors of the mortgagor. To this view of the case, we confine our examination of the record in determining the appeal. The exceptions consist of two classes—that relating to evidence,

and that relating to the instructions asked and refused, and those given to the jury.

Exceptions concerning evidence:

1. Exception.—The mortgagee, Crowell, testified, that the day after the assignment, the plaintiff, who lived at Monroe, came to Matthews, where witness resided, and they went to the store-house of Wager, when the fact of the assignment was made known to him, and the plaintiff took possession of the goods, and locked them up, and that some of the property was left by plaintiff with witness, who knew more about the debtors than the plaintiff; but he "was not authorized to use any of the money."

This latter remark was objected to but allowed, and the exception thereto is now very properly withdrawn.

The witness was then asked, "for what purpose did the plaintiff leave the notes with you?"

Objection was made to the question, and to the answer in response, but they were allowed, and the witness replied: "From the fact that I had contracted the debts with the parties and was acquainted with them, and better able to collect than the plaintiff," who left nothing with the witness that was included in the assignment, except the evidences of debt. The evidence was properly admitted. If the inference of a fraudulent connivance for the ease of the debtor, Wager, was sought to be drawn from the fact of the property being placed in the hands of the witness, it was surely competent to explain the transaction, and repel the inference, by stating the other facts, of which the understanding of the parties, if not expressed in terms, constitutes a part. The force of the declaration is spent in removing an injurious imputation upon a naked, unexplained fact, and for this limited purpose (and its legal effect extends no further) the statement was clearly receivable.

2. The next exception rests upon these facts: The witness, from his experience in the mercantile business, estimated

the goods to be worth $550, and, upon cross-examination, was inquired of, if he had not, at a former trial, put upon them a lower valuation, of $400? The witness replied in the affirmative, adding, that from what he saw of the goods, and information received since, he had given the higher estimate, and that he had not, when his first opinion was expressed, examined them closely.

Upon his examination by the plaintiff, he said: "I changed my mind as to the value of the property from what I heard the other witnesses testify at that trial, after my examination."

To this testimony objection was made, and overruled.

We are unable to see any reason for excluding the evidence. It was explanatory of a discrepancy in the estimates; and certainly a witness, who hears a fuller decription of the goods, and thus has information of their condition and kind, may change his mind as to their value; and besides, it was competent to account for the change his opinion had undergone, and his reasons for it, and is but matter going to his credit, and the weight due to his opinion. The defendant examined Wager himself, who, in describing what occurred at the time when the plaintiff, after the assignment, came for the goods, stated that he said to the plaintiff, that if the latter would take an inventory, and give witness credit for the stock in hand, and the book accounts, he would turn over the stock; that no agreement was made, and the stock was turned over, with the understanding that credit should be given on the secured debts for whatever sum might be derived from sales and collections. The witness, in answer to defendant's inquiry, "How did you turn over the goods to him?" replied: "Of course, I turned them over to him as mortgagee."

He further stated, that when he made the mortgage, it was understood between them, that witness was to remain in possession and make the most he could out of the goods.

Upon his cross-examination, the witness said it was not understood between himself and Crowell that witness was to sell the goods and apply the proceeds to that debt, as he was expecting at that time to get between five and ten thousand dollars, pension money, and he had no intention, when he made the mortgage, to defraud his creditors. To this latter statement objection was made, and overruled, and it has been earnestly pressed in the argument here, upon the authority of rulings in this Court, which affirm the general proposition, that acts fraudulent in themselves, as tending to hinder or obstruct a creditor pursuing his legal remedy, " do not cease to be such because the fraud, as an independent fact, was not then in the mind." *Cheatham* v. *Hawkins*, 80 N. C., 161; *Boone* v. *Hardie*, 83 N. C., 470; same case, on second appeal, reported in 87 N. C., 72.

The contention is, of course, undeniable, that where the necessary consequences of an act are to defraud a creditor, as by securing property for the use of the debtor, and if upheld, to place it beyond the reach of his debts, whether patent upon the face of the instrument or proved *aliunde*, the fraudulent element cannot be purged by a disavowal of such intent as present in the mind, and inducing the act.

Here, the evidence to sustain the imputation of fraud, is derived from the mortgagor's being left in possession, to dispose of the goods to the best advantage, and the absence of any positive arrangement for the appropriation of the moneys received by sale, and because the debtor expected to discharge the secured debts out of other funds he was looking for. Now, these facts furnish evidence of a fraudulent purpose, in making the mortgage to secure the goods for the benefit and ease of the debtor, calling for repelling proof to the contrary, and we can see no reason, in such case, for refusing to hear the mortgagor disclaim *such intent*, without which, its infectious presence in the transaction might, upon the other facts accompanying, have been inferred. As, in

the present case, the intent with which the conveyance is made, is not an irrebuttable presumption, but must so exist in the act of making the mortgage, to render it void against a creditor, it is competent for the mortgagor to deny that it was entertained.

"The test of the admissibility of the evidence of motive, or intent," says this Court, "is the materiality of the motive or intent in giving character to the act, and when they must, as separate elements, co-exist to constitute guilt, or *produce a legal result*. When, as distinct facts, each must be alleged and proved, the inference to be deduced may be met and *repelled* by the direct testimony of the party as to their being entertained by him." *State* v. *King*, 86 N. C., 603, citing 1 Whar. Ev., sec. 4⁵2.

When the facts show, irresistibly, the illegal purpose, and the party intended to do the act from which the consequences inevitably flow, he is held to intend both, and cannot be heard to speak to the contrary.

The plaintiff, then, on his own behalf, was allowed, after objection, to state that he knew nothing of any understanding between the parties to the mortgage, that the mortgagor was to remain in possession, when the goods were delivered to him, nor of any purpose on the part of either to defraud the mortgagor's creditors.

This negative testimony, disconnecting the plaintiff from any previous arrangements between them, affecting him as a purchaser, without notice, and for a valuable consideration, was competent and pertinent, so obviously so as to render comment and the citation of authority needless; and we proceed to examine the instructions asked.

These were seventeen in number, and the appellant admits that those numbered 4, 5, 11, 13 and 15, are substantially given, while the plaintiff insists that all are embodied therein, except such as are numbered 1, 2, 3, 7, 8 and 10.

These instructions requested, as well as the charge given *in extenso*, are as follows:

1. That even if the jury should find the facts to be as stated by the plaintiff's witnesses, Phifer and Crowell, as to the transaction with W. H. D. Wager, at his store, on the 11th of October, 1883, there was no sale to the plaintiff, and no title passed to him by said transaction, but the goods still belonged to Wager, at least so far as his creditors were concerned.

2. That if no inventory was taken of the goods, and there was no agreement between Wager and Phifer as to the value or price, then there was no sale to Phifer, sufficient to pass the title and right of the possession to him, and certainly not, as against the creditors of Wager, of the sheriff who seized them under executions against Wager.

3. Even if the jury believe the testimony of Crowell and Phifer, no title or right of possession to the property in dispute passed to the plaintiff by the transaction at the store of Wager.

4. That if, under the instructions of the Court, the jury shall find the mortgage of Wager to Crowell to be void, and shall further find that the goods were taken by Phifer by virtue of, and under the said mortgage and assignment thereof to him, or that the goods were delivered to the plaintiff, as the assignee of the mortgage, and not simply and solely to pay the debt, without regard to the mortgage, the plaintiff cannot recover, provided the defendant's intestate seized the goods under judgments, and executions issued thereon against Wager for his debts, as testified to.

5. That if Wager, from and after the time the mortgage was given to Crowell, continued in possession of the property mortgaged, by or with permission or consent of Crowell, dealing with and selling the same in the usual course of business, and appropriating the proceeds to his own use, and with the understanding and agreement, that he should so

deal with them, and the said Wager was insolvent, then the mortgage, as to his creditors, would be void.

6. That if the jury should find that if, at the time Crowell made the assignment to the plaintiff, he was insolvent, or had no other property, subject to the payment of his debts, but that conveyed in the assignment, and retained possession of any of the property with Phifer's consent, and in pursuance of a prior understanding to that effect, it is void, and passed no title or right of possession to Phifer to the debt of Wager due Crowell, and the mortgage made is to secure it or the property in dispute.

7. That there is a presumption of law that Phifer took the goods under and by virtue of the mortgage from Wager to Crowell.

8. That there is the same presumption of fact.

9. That the possession of Wager of the goods in dispute is constructive notice to plaintiff of the fraud.

10. That if the property in dispute was placed in possession of the plaintiff as a pledge, then the pledge is void by reason of uncertainty, no time being fixed for the dispossession of the property pledged.

11. That if, at the time the mortgage of Wager to Crowell was executed, Wager was insolvent and indebted, and it was understood and agreed that he, Wager, should remain in possession of the property and use it as his own, selling it and appropriating the proceeds of sales to his own use, and Wager did remain in possession, as testified, the said mortgage was fraudulent and void as to the creditors of Wager, and the defendant, or the creditors in the executions; and if the jury find further that Phifer took the goods from Wager as mortgagee, then he did not acquire a good title, as against defendant's intestate, and they will respond to the first issue, " No."

12. That if it was understood and agreed that Crowell should remain in possession of the property conveyed by the

assignment, and he did remain in possession, and Crowell was insolvent at the time the assignment was made, the assignment would be void, and they will respond to the first issue, "No."

13. That if it was agreed that Wager should deliver and surrender, and Wager did deliver and surrender the property to Phifer under the mortgage, because of Phifer's right of possession as mortgagee and the power of sale given to him (Phifer), in order that he might sell and discharge the debt to the value of the goods, the jury will find that Wager delivered the goods to Phifer as mortgagee, and that Phifer took them as mortgagee.

14. That if Phifer knew of the contents of the mortgage to Crowell at the time he took his assignment, and that Wager was in possession of the property, using it as his own, and that Wager was insolvent, the law raises a presumption that he had notice of the fraudulent character of the mortgage, and the jury will find that he had such notice, if they find the mortgage was fraudulent.

15. That from a knowledge of the facts stated in the last instruction, the law raises a presumption, that Phifer made due inquiry into the character of the transaction, and had notice of such facts as that inquiry would have disclosed.

16. That the registration of the mortgage to Crowell was notice to Phifer, as to its contents, at the time he took the assignment.

17. That if it was understood between Phifer and Crowell at the time the assignment was made, that Crowell should remain in possession of the land conveyed in the assignment and use it as his own, receiving and enjoying the rents and profits thereof, and he did so remain in possession, in pursuance of said assignment, the assignment would be void as to the creditors of Crowell and the defendant's intestate who held and levied under executions as testified, and the plaintiff acquired no right or title or right of possession to the

property described in the complaint, by virtue of said assignment.

His Honor instructed the jury as follows:

This was an action brought by the plaintiff against M. E. Alexander, now deceased, to recover damages for the taking and conversion, as it is called, of a certain stock of goods, which, it is alleged, he seized and converted. The plaintiff says Mr. Wager, in December, 1882, made a mortgage to one Crowell of a certain stock of goods at Matthews, to secure the payment of a $1,900 note, due February 25th, 1883, and that Crowell assigned, among other things, this note and mortgage to plaintiff, in October, 1883, and that, by this assignment, the plaintiff became the legal owner of the stock of goods, and that Alexander took those goods out of the possession of the plaintiff, and plaintiff demands a judgment for the value of said goods and damages for the taking and conversion.

The defendant, as administrator, answers, that defendant Alexander was sheriff of Mecklenburg County, and had execution in his hands, and, by his deputy, levied upon, seized and sold the goods as the property of Wager; he says that the alleged mortgage from Wager to Crowell was fraudulent and void, and therefore the assignment from Crowell to Phifer of this mortgage, and the note by which it was attempted to be secured, did not pass anything to Phifer. And the first issue submitted to you, "is the plaintiff the owner of the goods?" &c., involves in it these important questions, concerning the validity of the mortgage from Wager to Crowell. Upon the face of the mortgage there is nothing to indicate fraud; so you must look further to see whether the mortgage from Wager to Crowell was in fraud of the creditors of Wager. Now the burden being on the defendant, if he has satisfied you, by a preponderance of evidence, that, at the time the mortgage from Wager to Crowell was executed, Wager was insolvent, and indebted to other persons than Crowell, and

that it was understood and agreed between Wager and Crowell, that he, Wager, should remain in possession of the property conveyed by the mortgage, and use it as his own, selling it and appropriating the proceeds to his own use, and Wager did remain in possession, as testified, then the mortgage was fraudulent and void as to the creditors of Wager, and the defendant, or the creditors in the execution; and if the jury find further, that the plaintiff took the goods from Wager as mortgagee, then he did not acquire a good title as against defendant's intestate, and the response to the first issue should be "No." The fact, as proven, that the mortgage was made to secure, in large part, an indebtedness incurred at the time of the execution of the mortgage, cannot affect the principle of the law, which is applicable to this case, that when one mortgages a stock of goods to secure a debt, and is permitted to remain in possession of this stock, and use the same as his own, and sell and replenish the stock, and deal as in ordinary course of business one deals with his own property, the transaction is fraudulent and void as to the creditors of the mortgagor; that is, while it may be good between the parties themselves, yet, as to the creditors of the mortgagor, the transaction cannot be allowed to stand to their prejudice. Whether there was an actual intent to defraud, makes no difference, for the law holds that the effect of such delivery is to hinder and delay creditors of the mortgagor. So, that, if Phifer took the stock of goods because he was the assignee of Crowell, and therefore stood as the mortgagee himself, and for the purpose of appropriating them as directed by the mortgage, and if you have found that those circumstances were around the mortgage transaction, which I have told you would make it fraudulent as to creditors, and if Phifer knew of the contents or provisions of the mortgage to Crowell at the time he took the assignment (and the registration of the mortgage was notice to him of its provisions), and if he knew that Wager was in possession of the

property, using it as his own, that he was insolvent and was indebted to others, the law raised the presumption that he had notice of the fraudulent character of the transaction, and your response to the first issue should be " No." The plaintiff was not the owner of the goods. But if the testimony brings you to the conclusion, that Phifer, being the assigee of the note, took the goods from Wager without regard to the mortgage, and independently thereof, in payment of the note, the debtor, Wager, would have the right to pay the note, even though he owed other debts, and to deliver up the goods in payment, or satisfaction of the said note; and if this was the transaction between Wager and Phifer, the giving up of the goods, to be sold and credited upon the note, without regard to the mortgage, the effect would be to treat the mortgage as if it had never been, and simply being indebted on the note, to turn over the goods in payment of the debt as far as they would go, and Phifer did get a good title to the goods, your answer will be " Yes ;" unless you shall find that the assignment from Crowell to Phifer was fraudulent, upon the same principle of law as I have explained to you, governing the mortgage from Wager to Crowell. The placing of notes and accounts in the hands of Crowell, or the leaving them in his hands for collection, as agent of Phifer, or the leaving of the land, described in the as-ignment, in the possession of the assignor, he being insolvent, would not, of themselves, raise a presumption of fraud in the assignment. Now, if upon these principles, which I have endeavored to explain to you, you have come to the conclusion that the plaintiff Phifer was not the owner of the goods, and your answer being ."no," you may return your verdict without troubling yourselves about the other issues; for if he was not the owner of the goods, the plaintiff has no right of action. But if you have come to the conclusion, upon the evidence, that the plaintiff was the owner of the property described in the complaint, you will respond to the

first issue "yes," and your response to the second issue will follow, as a matter of course, that of the first. If you say "yes" to the first, say "yes" to the second, and proceed to consider the third and last issue, as to the value of the goods, and there is not a great deal of testimony on this issue; the largest estimate is $500 to $550, the lowest is something like $300. You will consider the testimony, and say what you think right.

Defendant excepted, and assigns as ground for exception:

1st. That his Honor refused to give his prayers for instruction in several particulars, as shown by the prayers and the charge.

2d. That his Honor erred in that part of his charge in instructing, relating to the fraudulent character of the assignment to Phifer.

Jury found issues one and two for plaintiff, and assessed his damages at $350.

Motion by defendant for a new trial; motion overruled. Judgment for plaintiff, and appeal by defendant.

The charge, in response to the proposition in which are enumerated, in juxtaposition, the facts which, if found to exist upon the evidence, involve fraud, and render the mortgage deed void, strongly presents the case against the plaintiff claiming under it, and, to say the least, quite as favorably to the appellant as he could reasonably ask. In portions of the charge, the mortgage is declared void in law, upon certain facts existing and found by the jury, without any finding of the intent. Thus it declares, that "when one mortgages a stock of goods to secure a debt, and is permitted to remain in possession of this stock, and use the same as his own, and sell and replenish the stock, and deal as in ordinary course of business one deals with his own property, the transaction is fraudulent and void, as to creditors," &c.; and this, without reference to the *intent* with which the deed was made, or the inferences to be drawn, by the jury, from these

subsequent facts, of the intent in making it, of which those facts are forcible evidence.

To render an instrument fraudulent, it must be so in its execution, the vitiating intent, co-existing in the making; and a fraudulent use *afterwards* made of the property, does not, *per se, avoid* the conveyance, but furnishes evidence, very strong, from which the jury may infer the *intent in making the conveyance,* and this use may call for the intervention of the equitable power of the Court in behalf of the creditor. *Moore* v. *Hinnant,* 89 N. C., 455; *Beasley* v. *Bray,* 98 N. C., 266.

We refer to this much of the charge as going very far in sustaining the defendant's contention, and, in our opinion, invading the prerogatives of the jury, in deducing conclusions, as to the intent, from the subsequent action of the parties, in regard to the use of the property.

The only matter contained in the instructions requested, not responded to favorably, is, as to what transpired when the goods passed into the possession of the plaintiff, and its legal effect in passing title, if none passed under the mortgage.

The jury were advised, that if the plaintiff took the goods, without regard to the mortgage, and independently of it, in part payment of the note, as understood by both, and it was agreed that the sum to be credited should be whatever was collected, then the plaintiff would acquire the title thereto. The evidence pointed strongly to a delivery to the plaintiff, as assignee of the mortgagee, yet there was some evidence to support the hypothesis of a disposition of the goods, and to warrant the charge, if correct in law, and this brings us to the consideration of this point.

The appellants' counsel insists that, assuming the parties intended a sale, it was ineffectual to pass the property in the goods, by reason of the want of a fixed and agreed price. Such was the rule of the civil law, and Mr. Justice STORY,

who was most learned in that system of jurisprudence, and an admirer of it, as his valuable works all show, in the copious illustrations drawn from that source, says : " It seems to be of the very essence of a sale that there should be a fixed price for the purchase." *Flagg* v. *Mann*, 2 Sum. R., 538.

But the rule, established by repeated adjudications, is not so rigorous, and the price may be left to be fixed afterwards, by reference to market value, or by a designated person, or in any other way in which it may be ascertained with certainty, and then the sale is effectual, and the price determined; and especially is this so, when the thing is delivered to the purchaser. If nothing is said at the sale and delivery, the sum to be paid is what the goods are reasonably worth. 2 Benj. Sales, 102, 4 Am. Ed., in two volumes. It is only necessary to refer to a definite standard, that the price may be made certain. 1 Parson Cont., 459.

The only material matter to give effect to a sale, and the transfer of title, is to provide in the contract a definite and sure means of arriving at the sum to be paid, and when this is ascertained, it is the same as if it had been definitely agreed upon at the time of the sale, and the vesting of the property is referable to that time.

It is otherwise, if the price is left open for future adjustment between the parties, with no agreement, binding on each, as to how the price is to be ascertained, and what it shall be.

These principles are settled by Mr. Benjamin in chapter 5, of the 2d volume of his excellent work, and in the valuable notes contributed thereto. *Wittkowsky* v. *Wasson*, 71 N. C., 451 ; *Mallory* v. *Jordan*, 12 Ired., 79 ; *Devane* v. *Fennell*, 2 Ired., 36 ; *Morgan* v. *Perkins*, 1 Jones, 171.

It must be declared that there is no error, and the judgment is affirmed.

No error.                                        Affirmed.