## P. H. BOOTH v. J. R. CARSTARPHEN.

*Assignment for the Benefit of Creditors—Fraudulent Deeds of Assignment—Provisions for the Benefit of the Maker—Fraudulent Intent—Actual Intent.*

1. Where the maker of a deed of assignment to secure certain creditors was much embarrassed, financially, and owed debts other than those secured thereby, and the deed contained a clause providing that he should remain on the assigned premises for two years and retain the rents and profits for his own benefit, reserving also his homestead and personal property exemptions: *Held*, that such conveyance raised a strong presumption that it was in fraud of creditors, and, nothing to the contrary appearing, should be declared void by the Court.

2. The admission of the plaintiff that there was no *actual intent* to defraud some particular creditor does not prevent the deed from being fraudulent as to him. The facts and circumstances of the transaction determine its character and intent, without regard to the actual intent proved.

3. Discussion by MERRIMON, C. J., of fraudulent deeds of assignment.

In this case, which was tried in the Superior Court of HALIFAX County, by *Boykin, J.,* the parties agreed upon, and submitted to the Court for its judgment thereupon, a statement of facts, the material parts of which are as follows:

"1. That the Sheriff of Northampton County, by virtue of sundry executions to him directed, issued from Northampton Superior Court on May 5th, 1887, and returnable to Fall Term, 1887, of said Court, upon judgments duly docketed in said Court against the defendants John R. Carstarphen and others, partners trading as Carstarphen, Grant & Co., and in favor of P. H. Booth and others, did, on Monday, the 1st day of August, 1887, having first caused the homestead and personal property exemptions to be allotted and set apart, and after due advertisement, sell, at public auction, for cash, at the court-house in the town of Jackson, the following lands, then in possession of and belonging to the defendant John R. Carstarphen, and situate in said county of Northampton, to-wit: That tract on which the said, &c. (describing several tracts), * * * where and when the plaintiff became the purchaser of said lands, complied with the terms of sale, and received the Sheriff's deeds therefor, and which deeds were duly recorded August 11th, 1887.

"2. That, on January 15th, 1884, the defendant John R. Carstarphen was much embarrassed financially and wholly insolvent, and has been ever since, his principal indebtedness being on account of the debts of Carstarphen, Grant & Co., a mercantile firm lately doing business in said county. The other members of said firm were the defendants James W. Grant and one B. D. Woodruff, both of whom were, on said day, and have been ever since, totally insolvent.

"3. That the assets of said firm were, on said January 15th, 1884, worth $4,000, and, on which day, they were conveyed to one J. S. Grant in trust to secure the indebtedness of said firm—a debt of $5,674.74 to the defendants Vaughan & Barnes being preferred. Said trustee has paid said

Vaughan & Barnes about $3,200 on their said debt, and has in hand from $600 and $800 more to apply to said debt.

"4. That, on said January 15th, 1884, the defendant Carstarphen conveyed all of his individual property, both real and personal, subject to his real and personal property exemptions to be thereafter allotted to him, to trustees, as follows:

"1. To one W. H. Collier he conveyed, by deed of trust, all of his stock of goods and store fixtures, then lying and being in his store, near his residence, in Northampton County, and all his choses in action, to secure certain of his individual debts, among which was a debt of $1,000 due the defendants Jones, Lee & Co. The property conveyed by this deed was not sufficient to pay, in full, the debts therein secured, and there has only been $100 paid on the Jones, Lee & Co. debt.

"2. To the defendant James D. Boone he conveyed, by deed of trust, all of his other individual property, both real and personal, not embraced in the aforesaid deed to W. H. Collier, to secure the payment of the aforesaid debt of $5,674.74 to Vaughan & Barnes, and the aforesaid debt of $1,000 to Jones, Lee & Co., which deed was duly recorded January 16th, 1884, a copy of which is herewith filed, marked exhibit 'A,' as a part of this case. The real property conveyed by said deed of trust is the same as that described in the first paragraph of this agreed case, being all the real estate owned by said Carstarphen. At the same time defendant Grant conveyed, by deed of similar purport, all his individual property, real and personal, preferring said Vaughan & Barnes, a copy of which deed is also hereto attached, exhibit 'B'

"5. That no sale has been had by the trustee Boone of any part of the property conveyed to him as aforesaid, nor have any of the creditors secured thereby notified or requested the trustee Boone to take possession and sell any part of

said property; but the said creditors were advised by their attorneys that the defendant Carstarphen had a right to postpone the sale of his real estate until the assets of the concern of Carstarphen, Grant & Co., in the hands of the trustee J. S. Grant aforesaid, were exhausted; nor has said trustee ever taken into possession, or exercised any control over any of said property conveyed to him.

"6. That ever since the execution of said .deed of trust to said Boone, said John R. Carstarphen has been in the possession and enjoyment of all the property conveyed thereby, using and consuming the same for his own use and benefit, without hindrance or interference on the part of the trustee Boone, or any of the beneficiaries.

"7. The real and personal property exemptions were never allotted and set apart to said Carstarphen until the __ day of June, 1887, when they were allotted under the executions mentioned in the first paragraph of this case.

"8. That the judgments on which the aforesaid executions issued were obtained and docketed subsequent to the execution and recordation of the aforesaid trust deed to said Boone; but the debts on which the aforesaid judgments were obtained were contracted several months prior thereto.

"9. That there is still due and unpaid, the debt of Vaughan & Barnes ($5,674.74), less the amounts received by them as aforesaid from J. S. Grant, trustee, and the debt of Jones, Lee & Co. ($1,000), less the $100 paid them as aforesaid.

"10. That the plaintiff admits, that in making the deed in trust to Boone there was no actual intent to defraud the creditors of Carstarphen, Grant & Co., but he insists that the intent with which it was made cannot change its legal effect, and that, upon its face, with the foregoing agreed facts, it is fraudulent in law, and, therefore, void as to other creditors."

The copy of the deed, marked exhibit "A," mentioned above, contains, among others, the following provision:

"Upon this special trust and confidence, however, that the said James D. Boone will hold, use and apply the same to the interest and uses following, and to no other—that is to say, if the party of the first part should fail to pay off and discharge the claims due to R. B. Peebles, Vaughan & Barnes, Jones, Lee & Co., on or before the first day of January, 1886— then it shall be lawful, and shall be the duty of the said James D. Boone (being thereunto requested by the said parties), to sell said property, or so much thereof as may be necessary, after duly advertising the same according to law, and, after discharging said claims and all costs that may have grown out of the proceedings to sell land, to pay over the surplus to the party of the first part. And it is further covenanted and agreed by and between all the parties to these presents, that, in the meantime—that is to say, from the date hereof until the day of sale—the said party of the first part shall be entitled to live on the land, and to take, use and apply the rents, issues and profits, and every part thereof, to his own use and benefit."

The complaint demands judgment for an account to ascertain what amount was due the creditors secured by the deeds of trust mentioned; that the deed of trust be declared fraudulent, null and void as to the plaintiff; that plaintiff have possession of the land described in the complaint, and for general relief, &c.

Upon the facts so submitted to the Court, it gave judgment for the defendants, and the plaintiff, having excepted, appealed.

*Mr. J. M. Mullen,* for plaintiff.

*Messrs. T. W. Mason, W. H. Day* and *R. B. Peebles,* for defendants.

MERRIMON, C. J.— after stating the facts: A deed like that
in question here may be necessarily void because of fraud
appearing upon its face from its vitiating provisions and
purposes. This is so when the facts constituting the fraud
so appearing are so manifest and of such vitiating character
as that they of themselves imply fraud that admits of no
explanation or conclusion to the contrary. In such case, it
is the province and duty of the Court to declare and adjudge
the deed fraudulent and void whenever the same shall come
before it for adjudication. The reason is, that the facts so
appearing necessarily imply the fraudulent intent and char-
acter of the deed, and the Court simply applies the law.

There are other cases where, in such a deed, one or more
of its provisions and purposes, apparently and *prima facie*,
imply fraud and the fraudulent intent and purpose of the
maker thereof. In such case the law raises the presumption
that the deed is fraudulent, and therefore void, and this pre-
sumption will prevail and destroy the efficacy of the deed,
unless a party claiming benefit of it shall rebut the presumption
by proper evidence, proving that the supposed vitiating pro-
visions were not such in fact, but lawful, and such as might
properly be made and have effect. The rebutting facts proven
must be such as that, if they appeared in appropriate connec-
tion in the deed, they would so explain and modify the provis-
ions thereof, *prima facie* and of themselves fraudulent, as to
render the deed, upon its face, free from fraudulent intent and
purpose. The presumption of fraud may be rebutted, because
the provisions of the deed, apparently fraudulent, and to be so
treated in the absence of satisfactory explanation, do not
necessarily and conclusively imply fraud—they admit of
possible explanation that may render them valid. *Hardy* v.
*Simpson,* 13 Ired., 132; *Starke* v. *Etheridge,* 71 N. C., 240;
*Cheatham* v. *Hawkins,* 76 N. C., 335; same case, 80 N. C., 161 ;
*Holmes* v. *Marshall,* 78 N. C., 262; *Boone* v. *Hardie,* 87 N. C.,
72; *Moore* v. *Hinnant,* 89 N. C., 455; *Hodges* v. *Lassiter,* 96

N. C., 351; *Beasley* v. *Bray*, 98 N. C., 266; *Phifer* v. *Erwin*, 100 N. C., 59; *Brown* v. *Mitchell*, 102 N. C., 347; *Woodruff* v. *Bowles*, 104 N. C., 197; *Bobbitt* v. *Rodwell*, 105 N. C., 236.

The fraudulent intent of a party charged with fraud in any transaction or matter appears from, and must be determined by, acts done or omitted to be done—their nature, connections, purpose and effect in contemplation of law. Such intent does not depend upon nor consist in, nor is it to be ascertained from simply the thought and purpose of the mind, but it depends upon, and is to be ascertained from such thoughts and purposes evidenced and manifested by and taken in connection with the acts done or not done, and pertinent facts and circumstances. It is the act or thing done or not done that gives cast, quality and character to the thought and purpose of the mind—the intent—and of this the law takes notice. The law cannot lay hold of and deal with the simple inactive intent of the mind; it knows and regards the intent as it appears to have distinctive character from what is done or not done in any transaction. It is therefore that a deed must be adjudged fraudulent and void when a provision or stipulation in it necessarily and conclusively implies its fraudulent character. Hence, too, when a provision in it raises the presumption that it is fraudulent, the law implies the intent, and the Court must adjudge the deed void unless the presumption shall be rebutted. And such presumption cannot be rebutted by the mere fact that the thought, the simple intent, of the mind of the party charged with the fraud had no actual intent of his mind to perpetrate the same. He must produce evidence to prove pertinent facts—something done or not done—and facts and circumstances that in their nature, connections and bearings give cast, character and direction to the intent of the mind, as expressed in them, and show that the provisions of the deed supposed and presumed to be fraudulent were not so

107—26

in contemplation of law, but really lawful. A party cannot be allowed to say that he did not really intend to perpetrate a fraud or do a fraudulent act, when the plain, necessary, natural and legal consequences of his acts are fraudulent in contemplation of law. *Cheatham* v. *Hawkins*, 80 N. C., 161; *Boone* v. *Hardie*, 83 N. C., 470; same case, 87 N. C., 72; *Phifer* v. *Erwin*, 100 N. C., 59.

The purpose of the deed before us in question purports to be to convey the land described therein to the trustee, to secure the payment of certain debts specified to the creditors therein named. At and before the time it was executed, the maker thereof was much embarrassed financially, wholly insolvent, and owed debts other than those provided for in it. It was executed on the 15th of January, 1884, and the power of sale provided therein could not be executed by the trustee until after the first day of January, 1886. It contains, among other provisions, one in these words: "And it is further covenanted and agreed by and between all the parties to these presents, that, in the meantime—that is to say, from the date hereof to the day of sale—the said party of the first part shall be entitled to live on the land, and to take, use and apply the rents, issues and profits, and every part thereof, to his own use and benefit." The deed further reserves to the maker thereof his right of homestead, and, as well, his personal property exemptions. If all these facts appeared on the face of the deed, it would be so manifestly and essentially fraudulent that the Court would at once declare it void as to creditors other than those claiming benefit under it. But, although some of the material facts do not so appear, still the insolvency of the debtor—the maker of the deed—at the time he executed it; that he owed debts not mentioned in it; that the trust could not be closed for two years; that he reserved his right of homestead in the land, and his right of personal property exemptions; that pending the trust, he was to have the right to

live upon and have the rents and profits thereof, clearly raised the strong presumption that the deed was fraudulent, and, if such presumption was not rebutted by proper evidence, then the Court should have declared the deed void. This is so clear that we need not delay to point out the reasons that lead us to this conclusion. These are fully stated in the cases cited above, and many others in our own reports, and elsewhere. Indeed, this seems to be hardly denied.

But it is contended that "the plaintiff admits, that in making the deed in trust to Boone there was no actual intent to defraud the creditors of Carstarphen, Grant & Co.," and, therefore, the deed is not fraudulent. This contention is not well founded. The provisions mentioned of the deed, and the attendant pertinent facts admitted, manifest, give character and point to the intent, and imply, in legal contemplation, the fraudulent purpose of the maker. The mere fact that he had "no actual intent" to defraud the creditors named, the absence of which was unexpressed and was not made manifest by acts done, or not done, and pertinent facts and circumstances explanatory of, and modifying the meaning of the facts constituting the apparent fraud, and thus showing the lawful intent, could not rebut the presumption. This could be done, not by mere absence of special fraudulent purpose of the mind, but by intent made manifest by pertinent facts and circumstances, which, taken in connection with, and in their just bearing upon, the facts raising the presumption, show an honest and lawful purpose.

In *Hardy* v. *Skinner*, 9 Ired., 191, it was admitted that the plaintiff "did not impute any actual fraud to the parties other than what appeared from the deed itself; but he insisted that the deed was, upon its face, fraudulent in law, no matter what the defendant might show, and that the Court was bound so to pronounce." The Court said, that "although this is a singular and extremely suspicious trans-

action, yet this Court thinks the plaintiff gave up his case by admitting that there was no fraud in fact, and that everything might be taken in favor of the deed which could show that it was *bona fide.*" The present case, it seems to us, is very and materially different from that one. There, the plaintiff insisted that the evidence of fraud appearing on the face of the deed could not be explained or modified, and that it was essentially and conclusively fraudulent. So insisting, he admitted that there was not "any actual fraud of the parties." Hence, the Court said justly, "that everything might be taken in favor of the deed which could show that it was *bona fide.*" The admission was so broad that the Court treated the case as if the defendant had produced appropriate and sufficient evidence to rebut the presumption of fraud. But in this case, the admission is "there was no actual intent to defraud," etc., not that there was not "any actual fraud." If it had been proven, instead of admitted, that the defendant maker of the deed simply had no "actual intent to defraud," this could not be evidence to disprove the fraudulent intent manifested by acts, facts and circumstances which the law could take notice of and deal with. Nor can it be fairly insisted that the admission of "no actual intent to defraud," etc., should be treated as an admission that the defendant could prove such facts as would, in their nature, bearing and effect upon the evidence raising the presumption, show the absence of a fraudulent intent and a lawful purpose. It is very apparent the admission was not intended to have such broad and comprehensive meaning. It meant no more than that the maker of the deed had "no actual intent to defraud," without reference or regard to his intent coupled with, and made manifest by, what he actually did. The mere intent of the mind could not rebut the intent accompanied and manifested by, and implied from, acts done.

The facts agreed upon, so far from rebutting the presumption that the deed in question is fraudulent, and on that account void, seem to strengthen it. Clearly, in contemplation of law arising upon the facts admitted by the parties, the purpose and effect of it was to hinder and delay the creditors not mentioned in the deed, and to provide, to their prejudice, for the ease, convenience and valuable advantage of the debtor.

We are, therefore, of opinion that the Court should have adjudged that the deed was inoperative and void, and given judgment in favor of the plaintiff for the possession of the land.

There is error. The judgment must be reversed and judgment entered for the plaintiff, in accordance with this opinion. To that end, let this opinion be certified to the Superior Court. It is so ordered.

Error.