WILLIAM A. BARBER v. WILLIAM H. BUFFALOE.

*Assignment in Fraud of Creditors—Exemptions—Evidence—Fraudulent Intent.*

1. The reservation of exemptions allowed by law in a deed of assignment is no evidence of a fraudulent intent.

2. Employing an attorney who resides at some distance, and in another county, to draw the deed of assignment, and making a provision therein authorizing public or private sale for cash, are not circumstances of fraud.

3. In an action by the assignee, under a deed of assignment for the possession of certain articles conveyed and described therein, in the possession of a constable under execution, it appeared that the assignment, which preferred one creditor, was made after summons served and promise made to pay some of the debts on a day certain, and immediately after such service and promise the assignee sent some distance to another county and procured an attorney to write the assignment in great haste, and in the night, and the same was in like manner recorded: *Held*, (1) That these circumstances are not inconsistent with an honest intent; (2) that such haste and secrecy might well have been in the interest of the preferred creditor; (3) that, it appearing further, by the assignor's testimony, that his intent was not fraudulent, the Court erred in not giving the instruction asked, "that there was no sufficient evidence to go to the jury that the plaintiff was not the owner of the property described in the complaint."

(MACRAE, J., dissenting.)

CIVIL ACTION, tried at September Term, 1892, of Superior Court of NORTHAMPTON, before *Brown, J.*

The debtor, J. C. Lassiter, assigned his stock of goods and many other articles of personal property, subject to his exemption " to be set apart to him in the manner provided by law," and also all his notes and other evidences of debt, to the plaintiff as trustee, with power to sell publicly and privately and apply the proceeds as they might arise from sales and collections: first to the payment of the costs incident to the execution of the trust and five per cent. as the com-

missions of the trustee ; second, to the discharge of the residue of a debt due to a particular creditor for borrowed money remaining unpaid after the sale of a tract of land already conveyed to such creditor to secure the same debt; and thirdly, any residue left after paying the personal property exemption, costs and commissions pro rata in satisfaction of all other outstanding debts.

The defendant Buffaloe served summons in two actions, brought by one Augustus Wright, on Lassiter, Saturday, December 7, 1889, and obtained judgment the same day, but he did not place execution in the defendant till December 11, 1889. On Saturday, when defendant served summons, Lassiter told him, if defendant's testimony is to be believed, that he would come to Jackson on the following Thursday, would see Mr. Peebles, counsel for Wright, and make arrangements to pay the debt. But on Saturday night one Riddick was sent by Lassiter, for whom he was then acting as clerk, eighteen miles to bring a lawyer from Scotland Neck (Jackson, the county seat, being only fourteen miles from his home). The attorney arrived at Lassiter's house on Sunday morning, and at 10 o'clock on Monday morning wrote the assignment which was taken to Jackson by Riddick, who was accompanied by plaintiff, so early that it was necessary to arouse the Clerk and Register of Deeds in order to have the assignment proved and registered. Riddick and Barber returned to the store in about two hours, and the latter took possession of the property conveyed, on the same day, Monday. Four days later, the defendant, as constable, levied the executions in favor of Wright on the unsold goods in the store and seized them. Lassiter testified, among other things not material, as follows : " I made the deed in trust to pay the creditors named in the trust, not to cut out Augustus Wright. I wanted to prefer Norman & Emmett, because I owed them borrowed money, and I put all other creditors on equality." The defendant, as an officer, levied

the executions placed in his hands on the day he received them (March 11, 1889) on the stock of goods, and the plaintiff, as trustee named in the deed of trust, brought the action to recover them.

Upon the testimony, of which the foregoing summary sets forth all that is material, the plaintiff asked the following instructions: " That there is no sufficient evidence to go to the jury that the plaintiff is not the owner of the property described in the complaint." The request was refused, and the plaintiff excepted. Verdict and judgment for defendant. Plaintiff appeals, and assigns as error the refusal to give the instruction asked.

*Mr. R. O. Burton,* for plaintiff.
*Mr. S. F. Mordecai,* for defendant.

AVERY, J.: The testimony of Lassiter as to his intent was not contradicted, unless the circumstances, shown by him and other witnesses, were badges of fraud to be submitted to the jury as tending to prove a purpose on his part to hinder, delay or defeat other creditors. The fact that the goods were in express terms assigned " subject to his personal property exemption to be set apart to him in the manner prescribed by law," is no evidence of a fraudulent intent whatever, and it would be error to submit the fact to the jury as tending to show such purpose. *Eigenbrun* v. *Smith,* 98 N. C., 207; *Bobbitt* v. *Rodwell,* 105 N. C., 244. The circumstance that the deed clothes the plaintiff, as trustee, with power to sell for cash, either publicly or privately, is not inconsistent with perfect good faith, and is not a badge of fraud to be considered by the jury as bearing upon the intent. *Bobbitt* v. *Rodwell, supra.* The employment of a lawyer who lived outside of Northampton County and eighteen miles from the debtor's residence, while the court-house was distant only fourteen miles, was not a circumstance to

be le't to the jury as tending to show the intent.  It is not necessary to adduce authority in support of the proposition that the Court could not leave the jury at liberty by express instruction to infer a fraudulent intent from the fact of employing counsel living outside of the debtor's county, or more remote from his home than the court-house of his county.  But after telling the defendant when he served the summons on him in two cases on Saturday morning about 10 o'clock, to say to Mr. Peebles (counsel for the creditors suing) that he would "come up on the next Thursday and try to make arrangements," the debtor sent his clerk on the same evening to Scotland Neck for his own counsel (Mr. Dunn), who arrived on Sunday morning, and, after waiting for the Sabbath to pass, wrote, at 1 o'clock Monday morning, the assignment which, upon being duly executed, was sent by his clerk Riddick, accompanied by the plaintiff, to Jackson, where they aroused the Clerk and Register of Deeds from their slumbers in order to prove the assignment and cause it to be registered.  The main question, therefore, is whether the conduct of the debtor, in making all of these arrangements to expedite the execution and registration of the deed, was sufficient of itself to go to the jury as evidence of a fraudulent purpose to hinder, delay or defeat the creditors, other than Norman & Everitt.  It must be remembered that Lassiter had previously mortgaged a tract of land to secure the debt due to Norman & Everitt, and in the assignment, after preferring them as to any balance due over and above the sum realized by selling the land, had provided for the payment *pro rata* of all other debts owing by him, whether mentioned therein or not.  So that the only practical effect of his haste in the preparation, execution and recording of the deed, was to give Norman & Everitt a lien upon the goods before the other creditor, Wright, could thwart his purpose by seizing them.  The law recognizes the debtor's right to prefer, by assignment, duly registered, one or more

111—14

creditors over all others up to the very moment when a superior lien is acquired by seizure under execution. The facts in this case, in any aspect, show that the debtor has but exercised the privilege which is universally accorded to him in this State. *Guggenheimer* v. *Brookfield*, 90 N. C., 232; *Hafner* v. *Irwin*, 1 Ired., 496.

Waite, in his work on Fraudulent Conveyances, sec. 390, and note, says: "The right of a debtor under the rules of the common law to devote his whole estate to the satisfaction of the claims of particular creditors, results from the absolute ownership which every man claims over that which is his own. It makes no difference that the creditor and debtor both knew that the effect of the application of the insolvent's estate to the satisfaction of the particular claim, would be to deprive other creditors of the power to reach the debtor's property by legal process or enforce the satisfaction of their claims. If there is no secret trust agreed upon between the debtor and creditor in favor of the former, the transaction is a valid one at common law." If the debtor makes choice of creditors, merely, without contriving that any other particular creditor or class of creditors shall never be paid, or shall be delayed, hindered or embarrassed in the enforcement of their demands, he exercises a right accorded to him by law. Bump. Fraud. Con., p. 223. "A preference may be given," says Bump., page 218, "and received for the express purpose of defeating an execution, for the mere intent to defeat an execution does not of itself constitute fraud. This is not delaying or hindering within the meaning of the statute. It does not deprive other creditors of any legal right, for they have no right to a priority. It is a race in which it is impossible for everyone to be foremost. He who has the advantage, whether he gets it by the preference of the debtor or by his own superior vigilance, or by both causes combined, is entitled to what he wins, provided he takes no more than his honest due."

If Wright had actually obtained judgment and caused execution to issue, the mere preference of another creditor after that, though the assignment was executed in the night time, was not fraudulent if there was no purpose to defeat the collection of Wright's claim, except in so far as such a result was necessarily incidental to the preference.

The creditor, represented by the defendant, is not attacking for fraud a conveyance of the property to another, or in trust for the exclusive benefit of others, but an assignment under which he (Augustus Wright) with all creditors, other than the preferred firm, is to share as a beneficiary in proportion to the amounts of their respective claims. If the debtor's right to prefer by assignment can be exercised in favor of any one debt up to the very moment when a lien is acquired by some other creditor, have the Courts power to restrict this privilege, of which the Legislature has refused to deprive debtors since the repeal of the stay laws, by arbitrarily declaring that if arrangements are made on Saturday night, and after suit brought on Saturday morning, for its exercise before daylight on Monday morning, the jury may be left to draw a distinction more subtle than any of the diversities of Lord COKE, or the refinements of mediæval metaphysicians between knowingly preferring a given claim on the day before suit is brought, and the exercise of the same right which the Legislature persistently refuses to take from him, on Monday morning before daylight? Assignments are usually made by men who are not able or not willing to meet their obligations and perform their promises, and it would seem not simply parodoxical but absolutely absurd to assert for a debtor, who assigns because of failure to keep his promises, the unqualified power to create a superior lien on his property in favor of any given creditor up to the moment of docketing a judgment, and at the same time claim for the creditor the right to appeal to a jury to set aside the deed giving the preference because the suit had been brought (not judg-

ment entered) before its execution, and because he had super-added a vague promise to make arrangements on a given day to his already broken agreement to pay at maturity. Bump F. C., 218.   If the last false promise is a circumstance to be considered at all, then the failure to meet his obligation to each creditor, as debts fall due, can be arrayed in solid phalanx to show that his intent was to defraud.   Law is founded upon reason, and it would be not only sticking in the bark to attempt to follow such a nice refinement, but would lead to a contradiction of another well settled and important principle, often called in aid to determine a question of motive or purpose.   A person is always presumed to intend the natural, much more the inevitable, consequences of his own act, and if the only purpose was to prefer Norman & Everitt even to the extent of appropriating all of the assets, if necessary, to the payment of that debt, such a consequence might reasonably and naturally be expected to result from the exercise of the power to prefer.   The debtor testified that his whole purpose was to discharge the debt to Norman & Everitt, which is conceded to be a *bona fide* claim, and not to hinder, delay or defeat the claim of Wright, or of any other creditor.   Are the circumstances relied on such as should be submitted as testimony tending to contradict him? There is no expression in the assignment which shows it to be fraudulent in law, or which raises a presumption of bad faith in its execution, or which gives rise to such a suspicion of fraud as may be rightfully considered by the jury upon an issue involving the question.   The extreme limit to which this Court have gone in subordinating the right of preference to the requirement of good faith imposed by statute (*The Code,* § 1545) was in *Savage* v. *Knight,* 92, N. C., 493. But the complaining creditor in that case (Savage, Son & Co.) was not provided for at all in any class; whereas all other creditors were to share equally in any assets remaining after discharging the residue of the debt due Norman &

Everitt.  Bump. F. C , p. 224.  Another marked distinction between the two cases, grows out of the fact that while the denial by Lassiter of any intent but that to prefer, which was not unlawful, (*Hafner* v. *Irwin, supra; Lee* v. *Flannagan,* 7 Ired., 471) is not contradicted, it appeared there that one of the *cestuis que trust* declared in presence of the assignor, with the assent of the latter, that the actual purpose of both in making the assignment was to defeat the collection of the claim of Savage, Son & Co.

In *Moore* v. *Hinnant,* 89 N. C., 455, the question presented was, whether there was upon the face of the deed anything so suggestive of fraud as to raise a question for the jury, and the main point in several other cases was precisely the same. *Bobbitt* v. *Rodwell,* 105 N. C., 244, and cases cited; *Phifer* v. *Erwin,* 100 N. C., 59. It is a well settled principle that a voluntary assignment, not upon its face fraudulent in law, and containing no provision which raises a presumption of fraud in its execution, may nevertheless be subject to attack before the jury because of some provision in the deed looking to the b nefit of the debtor and to the detriment of the creditor, and where no inference of bad faith may be drawn from the instrument itself by testimony *dehors.*  But the authorities already cited, and many others that might he adduced, fully sustain the position that the mere exercise of the right of preference in an assignment is not sufficient of itself to go to the jury in support of the contention that it was executed for a fraudulent purpose.  It would seem equally clear that the right of preferring creditors, if it exists at all, carries with it, as incidental to its proper exercise, the further right, without giving rise to suspicion, to secure the services of counsel living inside or outside of the county, and to execute the deed at any hour i  the day. or night, certainly where all creditors, including those who attack the deed, come in *pro rata* after the satisfac ion of one debt that is preferred.  The failure to examine B rb r raises no presumption of fraud.

It does not appear that he was actually present at the time of the execution, though he accompanied Riddick to Jackson very early in the morning. But had he been present, the plaintiff was not bound to examine all of the witnesses present to rebut any inference which the law would draw against him for withholding testimony, even had it been a secret transaction exclusively between relatives. The testimony of Lassiter that he executed the deed for no purpose other than to give a preference to Norman & Everitt, was ample to destroy a presumption, if, in fact, any could have arisen, when the deed was drawn, not in the presence of the family or parties only, but by his counsel, an attorney of high standing. *Helms* v. *Green,* 105 N. C., 251. The fact that Lassiter wished to give a superior lien to Norman & Everitt over Wright, before the latter could obtain his judgment and cause execution to issue, and that with that end in view he and his attorney prepared the assignment soon after midnight, is not evidence of fraud for the jury, the claim of the complaining creditor not being left out entirely, as in *Savage* v. *Knight, supra,* but standing on a footing with all other debts. There is no testimony that should go to the jury as evidence of the intent except the deed itself and the testimony of Lassiter, and the Judge should have told the jury that there was nothing upon the face of the instrument to show a fraudulent purpose. We conclude, therefore, that in refusing the instruction asked there was

                                                Error.