M. L. T. DAVIS v. B. J. SMITH & CO.

*Assignment for Benefit of Creditors—Partners—Reservation of Homestead and Personal Property Exemptions—Fraudulent Intent—Burden of Proof.*

1. The reservation of personal property and homestead exemptions allowed by law for both of the assignors in a deed of assignment for the benefit of creditors is neither conclusive nor presumptive evidence of a fraudulent purpose.

2. One partner, with the consent of the other member of a partnership, may dispose of the company's effects for his individual use, and a creditor cannot interfere to prevent the application. Therefore, the reservation by assignors in a deed of assignment for the benefit of creditors of homestead and personal property exemptions out of the partnership effects did not raise any presumption, rebutable or otherwise, of a fraudulent purpose on the part of the assignors, but was a circumstance to be left to the jury.

3. Where, in the trial of an action to set aside a deed of assignment as fraudulent, it was admitted that the assignors attempted to secure a larger amount of indebtedness to one of the preferred creditors than was actually due, this fact did not shift the burden of proof of fraudulent intent from the plaintiff to the defendant in such action; nor was such admitted fact such presumptive proof of fraud as to justify the Judge in declaring the deed void without the intervention of a jury, but it was some evidence of a fraudulent purpose and was properly submitted to the jury upon an issue relating to the fraudulent intent of the assignors.

4. The designation of an irregular method of either setting apart the homestead or appraising personal property reserved by assignors in a deed of assignment does not vitiate the instrument or taint it with fraud. Therefore, where the assignors reserved from the operation of a deed of assignment the exemptions "allowed by law," the use of the words "to be set apart by the party of the second part" was neither conclusive nor presumptive evidence of fraud.

CIVIL ACTION to set aside as fraudulent a deed of assignment made by the defendants to E. H. Meadows, and to recover the indebtedness due the plaintiff by the defendants,

DAVIS *v.* SMITH.

tried before *Hoke, J.,* and a jury, at May Term, 1893, of CRAVEN Superior Court.

The assignee, E. H. Meadows, and J. A. Meadows, a preferred creditor, were made parties defendants.

The complaint, after setting out the indebtedness of the defendants to the plaintiff at the time of the assignment, alleged:

"5. That neither B. J. Smith & Co. nor D. W. Smith owed to the defendants named in Class II of preferences in said deed the sums directed to be paid.

"6. That in pursuance of the provisions in the deed, and as intended therein, the assignee selected three persons, who set aside to defendants D. W. Smith and B. J. Smith five hundred dollars worth of goods, each according to their valuation, from the stock of B. J. Smith & Co.; and also set aside to D. W. Smith his homestead exemption, including all the real estate described in the said deed of assignment, which they valued at the sum of $100—said three persons acting for the said E. H. Meadows, assignee.

"7. That according to the valuation so made, and in fact, both B. J. Smith & Co. and D. W. Smith were insolvent.

"8. That said deed of conveyance was made with intent to hinder, delay and defraud their creditors, and the said E. H. Meadows and J. A. Meadows had notice of such fraudulent intent.

"9. That E. H. Meadows under said deed has taken possession of personal property of the value of $900, or thereabouts, and has the books and notes of said B. J. Smith & Co., and of D. W. Smith and B. J. Smith for debts of large amounts, the value of the same being unknown to the plaintiff, but the same is largely in excess of their debts.

"10. The allegations made herein, except as to the existence of the debts, are made upon information derived from the public records, and from our attorney, who gained his knowledge from conversations with the defendants B. J.

Smith and D. W. Smith, and received by us. Wherefore, they demand judgment that the said deed of assignment is fraudulent and void, for the payment of their just debts, and costs thereon accrued, for the costs of this action, and such other and further relief as they may be entitled to."

The defendants denied the fifth and eighth articles of the complaint, and in answer to ninth article thereof said that the debts due the said B. J. Smith & Co. and D. W. Smith and B. J. Smith, which came into the possession of the defendant E. H. Meadows, amounted to about twenty-three hundred dollars, of which only a small amount could be collected by law.

The deed of assignment reserved to each of the partners the personal property exemptions of five hundred dollars to be assigned and set apart, if they should so elect, out of the goods, wares and merchandise owned by them as partners; a homestead was also reserved for D. W. Smith, one of the partners. The deed provided that the personal property exemptions and the homestead should be set apart and assigned by the assignee. The assignee was directed to pay, first, attorney's fee, and second " to apply the balance to the payment of the sum of $2,900 due to E. H. & J. A. Meadows Company, and the sum of $900 due J. A. Meadows, *pro rata*." There were subsequent classes of preferred debts.

Upon the examination of the defendants, J. A. Meadows being sworn, said: " B. J. & D. W. Smith owed me nothing except as appears upon my ledger at the time of the assignment. I am one of the stockholders and directors of the E. H. & J. A. Meadows Company (which is a corporation), and one of the managers."

E. H. Meadows, being duly sworn, said: " I am the assignee of B. J. Smith & Co. and D. W. Smith. I am one of the stockholders and directors of the E. H. & J. A. Meadows Company, and one of the managers. At the time of the assignment B. J. Smith & Co. owed to J. A. Meadows $432.63,

with interest. D. W. Smith owed to J. A. Meadows, including interest, $350.68. D. W. Smith owed to E. H. & J. A. Meadows Company $861.52. B. J. Smith owed J. A. Meadows $18.09. This is all the indebtedness between the parties except the cotton account. We were advancing money to B. J. Smith & Co. to buy cotton, which was to be shipped to us to secure the money. At the time of the assignment they owed us $1,879.01. We had the cotton at that time. None of the cotton had been sold at that time. Upon a sale of the cotton, in the spring following, and a settlement of the cotton account, there was a balance to the credit of B. J. Smith & Co. of about $136. About $500 worth of this cotton had been sold on December 10, 1891, and applied to the debt, which left a balance of about $1,300, which balance was paid by the spring sale as stated above. At the assignment I went out to Vanceboro and took an inventory, and laid off the exemption and homestead. I selected three parties; they took an inventory of the goods in the store, which amounted to about $1,120. There was $120 in excess, which I sold to Mrs. Smith, the wife of D. W. Smith; left the balance of stock, $1,000 by inventory, as the exemptions of B. J. Smith and D. W. Smith; the estimate of the assessors was at the actual value. The same three men laid off the homestead and personal property exemptions. My recollection is that they gave D. W. Smith the property on which he resided as his homestead. I was present. They reported in writing to me. I accepted the report and acted upon it. My mind is not clear as to the allotment of the homestead. I have received no money from the lands, and have done nothing with the lands as assignee. Part of the land was sold under mortgage to Nancy Coward. Since the assignment I bought the land at $450."

*Examined by the Defendants' Counsel.*—"The personal property sold to Mrs. Smith, amounting to $120, was sold for its full value. I was present at the time the assignment was drafted. D. W. Smith was present at the time it was drawn.

B. J. Smith was not.   I gave D. W. Smith information as to the indebtedness due E. H. & J. A. Meadows Company and J. A. Meadows, which is preferred in the assignment.   I did not have my books present.   I had asked the bookkeeper as to the amount of the indebtedness.   The $2,900 due E. H. & J. A. Meadows Company was intended to cover the general account; the $900 was intended to cover the individual account of J. A. Meadows.   I received the book accounts and notes, besides the $120 sold to Mrs. Smith.   I mean by this, that there was no assets left after the assignment of the homestead and personal property exemption.   I applied the cash ($120) to the payment to the first preferred creditor, and the expenses.   I have received nothing from the books; most of them are worthless.   There may be $300 or $400 collectible, but there are controversies on these about payments, etc.; sixteen hundred and odd dollars has been paid on the preferred debts of J. A. Meadows Company and J. A. Meadows.   That was the amount that I ascertained subsequent upon examination of my books.   I turned over the books and book accounts to Mrs. Holland Smith, the wife of D. W. Smith, and took a mortgage on the homestead, payable in one, two, three, four years.   The mules were included in the transfer to Mrs. Holland Smith; in fact, the entire assets. I received the full market value for assets turned over to Mrs. Smith.   The mortgage referred to above was taken by E. H. & J. A. Meadows Company and J. A. Meadows in satisfaction of the debts due them and preferred in the assignment."

The following issues were submitted to the jury:

1. Was the assignment made with intent to delay, hinder and defraud creditors of assignors?   Answer: No.

2. What was amount of indebtedness from B. J. Smith to J. A. Meadows, existing at the time of assignment and intended to be secured?   Answer: $18.09.

3. What was amount of indebtedness from B. J. Smith & Company to J. A. Meadows, existing at time of assignment and intended to be secured? Answer: $432.63.

4. What was amount of indebtedness from D. W. Smith to E. H. & J. A. Meadows, existing at time of assignment and intended to be secured? Answer: $861.80.

5. What was amount of indebtedness from D. W. Smith to J. A. Meadows, existing at time of assignment and intended to be secured? Answer: $350.68.

6. What amount has the trustee realized from the assignment since action commenced? Answer: $1,600.

All the issues except the first were answered by consent. His Honor charged the jury, reviewing the evidence, that the circumstances were submitted to them from which to determine the intention of the assignors B. J. Smith and D. W. Smith, and that they were to say whether the assignments were made with the honest purpose of paying their debts or for the purpose of delaying, hindering and defrauding their creditors, and that the burden of proof was upon the plaintiffs.

To this issue, the first, the jury responded "No." The plaintiffs moved to set aside verdict and for a new trial, which was overruled, and plaintiffs excepted.

The plaintiffs moved for judgment as demanded in complaint. Motion denied. Plaintiffs excepted.

Plaintiffs moved for judgment against defendants for costs. Motion overruled. Plaintiffs excepted.

The Court rendered judgment against the defendants B. J. Smith & Co. for the debts due the plaintiffs, but refused to set aside the deed, and plaintiffs appealed, assigning as error—

1. That there was no evidence that should have been submitted to the jury upon the first issue.

2. That there was no evidence upon which the finding of the jury upon the first issue can be supported in law.

3. That his Honor erred in charging that the burden of proof was upon the plaintiffs, and failing to charge that by the admission of the defendants and their testimony, as introduced by the plaintiffs, the burden was put upon the plaintiffs.

4. The refusal of the judgment as prayed by plaintiffs.

*Mr. W. D. McIver*, for plaintiffs (appellants).
*Mr. W. W. Clark*, for defendants.

AVERY, J.: The exceptions raise three questions—(1) whether there was any evidence to support the finding upon the first issue, which alone was submitted to the jury; (2) whether the admitted facts shifted the burden of proof from the plaintiffs to the defendants by raising a presumption that the deed of assignment was fraudulent; (3) whether there was error in refusing the motion of the plaintiffs for judgment upon the verdict.

If it plainly appears upon the face of a deed of assignment that it was executed not in good faith, but for the purpose of securing the ease and comfort of the debtor, the Court is empowered to declare it void without the intervention of a jury. *Woodruff* v. *Bowles*, 104 N. C., 197; *Brown* v. *Mitchell*, 102 N. C., 347; *Hardy* v. *Simpson*, 13 Ired., 132. Is the reservation of personal property and homestead exemptions for both of the assignors conclusive evidence of a fraudulent intent on their part? We think not. The reservation of the right to the personal property exemption and the homestead "allowed by law" was neither conclusive nor presumptive evidence of a fraudulent purpose. *Barber* v. *Buffaloe*, 111 N. C., 206; *Eigenbrun* v. *Smith*, 98 N. C., 207; *Bobbitt* v. *Bodwell*, 105 N. C., 236.

While "it is well settled that each member of a partnership has a right to require the application of the joint effects to the joint debts before any portion of them can be directed

to the satisfaction of the individual debts," it is a rule of law, as firmly established, that, " with the assent of the partners, any one of them is free to dispose of the company's effects for his individual use, and a creditor cannot interfere to prevent the application." *Allen* v. *Grissom*, 90 N. C , 90 ; *Clement* v. *Foster*, 3 Ired. Eq., 213 ; *Rankin* v. *Jones*, 2 Jones' Eq., 169. If there is no lien in favor of the creditors of the firm, we fail to see the force of the contention that the reservation of the exemptions out of the partnership effects, as the law permitted them to do, by agreement among themselves, raised a rebuttable, if not a conclusive, presumption of a fraudulent purpose on the part of the assignors. The late Chief Justice SMITH, in *Allen* v. *Grissom*, conceding that there was conflicting authority as to the right of partners, under an agreement among themselves, to apply partnership funds, by assignment or otherwise, to the payment of individual debts, says: " This is the doctrine established by repeated recognitions in this Court, from which, whatever may be the decisions elsewhere, we are not at liberty to depart, and it commends itself to our approval."

Admitting, therefore, that the research of the industrious counsel for the plaintiff has enabled him to array much authority from text-writers and Courts which have adopted different views, we are not required to again renew the discussion of questions so long ago settled by our learned predecessors.

The admitted fact that the plaintiffs in the deed attempted to secure a larger amount of indebtedness to any of the preferred creditors than was actually due, while it fell as far short of presumptive proof, was evidence of a fraudulent purpose, which, as we understand the case, was submitted to the jury as bearing upon the first issue. The weight of the testimony, in view of all accompanying circumstances shown, was to be determined by them.

After reserving the homestead and personal property exemption "allowed by law," the use of the subsequent language, " to be set apart by the party of the second part," constitutes neither conclusive nor presumptive evidence of fraud. Having reserved only such exemptions as the Constitution and laws recognized, the designation of some irregular method of either setting apart the homestead or appraising personal property would not vitiate the instrument or taint it with fraud. It would be simply evidence that the assignors were ignorant of the law or misunderstood the method of proceeding prescribed by statute, while it was still permissible for any aggrieved creditor, who should obtain judgment and sue out execution, to pursue the proper remedies to enforce his own judgment.

We can see no error in the charge of the Court, that the burden still rested upon the plaintiffs to prove the fraud which they alleged to the satisfaction of the jury. We find no testimony which in law would have shifted the burden of proof, but only circumstances bearing upon the inquiry involved in the issue submitted, the weight of which was properly submitted to the jury. There was

No Error.