W. A. BARBER v. W. H. BUFFALOE.

(Decided March 8, 1898.)

*Action of Claim and Delivery—Fraudulent—Conveyance—Consideration—Fraud—Evidence, Sufficiency of—Exceptions—Practice.*

1. Exceptions cannot be made for the first time in this Court and, hence, a defendant in an action to set aside a deed of assignment alleged to be fraudulent, cannot for the first time, in this Court, contend that it was incumbent on the plaintiff to show on the trial below that the debts secured in the deed were *bona fide*.

2. Where, in the trial of an action involving the validity of a deed of assignment for creditors alleged to be fraudulent, the trustee shows the existence of the evidences of some of the debts named in the deed, he thereby proves a consideration sufficient to support his title to the assigned estate. It is not necessary that he should prove the existence of all the debts named in the deed, nor of any particular debt.

3. Where, in an action involving the validity of a deed of assignment for creditors alleged to be fraudulent, a debt was attacked which, if allowed, would absorb the entire estate, the note of the assignor to the creditor to the amount of the debt, together with the testimony of the assignor that he had given the note for borrowed money, was sufficient proof of the existence of the debt.

4. To render a deed of assignment for creditors void, it is not necessary that the trustee shall participate in or have knowledge of the fraudulent intent of the assignor, the fraudulent intent of the latter, only, being sufficient to invalidate it.

5. Where, in the trial of an action involving the validity of a deed of assignment for creditors, it appeared that the deed was written by an attorney at midnight shortly after the plaintiff had obtained a judgment against the assignor; that the deed provided that the balance of a debt secured by a mortgage on the debtor's home should be first paid; that a relation, who was surety in such preferred debt, accompanied the attorney to the assignor's house and went with him during the night to have the deed recorded, and at the sale of the assignor's home under the mortgage became the purchaser and permitted the assignor to remain in possesssion without paying rent; and that the balance of the debt, after applying the proceeds of the mortgage sale, exceeded the value of the assigned estate; *Held* that the evidence of fraud was sufficient to require the submission of the question to a jury.

ACTION of claim and delivery, tried before *Timberlake, J.*, and a jury at Spring Term, 1897, of NORTHAMPTON Superior Court. The facts appear in the opinion. There was a verdict for the plaintiff and from the judgment thereon defendant appealed.

*Mr. R. O. Burton* for plaintiff.
*Mr. R. B. Peebles* for defendant (appellant).

FURCHES, J.: This case has been here before and is reported in 111 N. C., 206, and in 114 N. C., 228. On December 9, 1889, J. C. Lassiter made what appears to be a general assignment of all his property to the plaintiff Barber, in trust, apparently to secure and pay all his debts. In this deed of assignment it is provided that Barber, the trustee, shall at once take the property named in the deed into his possession, to sell the same for cash, privately or publicly, and out of the proceeds arising therefrom to first pay the debt of Norman & Everett, after the proceeds of other property of Lassiter, mortgaged as a security for the Norman & Everett debt, are applied. This mortgaged property has been

sold, and it brought $1,000; it was bought by one Biggs, surety on the Norman & Everett debt, and uncle of Lassiter's wife.    And it is admitted that the Norman & Everett debt will absorb the proceeds arising from sales of property in Barber's hands as trustee, after payment of costs, charges, etc.    The deed in terms provides that, after the Norman & Everett debt is paid, all the as-signor's debts shall be paid *pro rata*, and the debt of Augustus Wright is one of the debts named in the deed of assignment.

It was in testimony that the defendant is a public of-ficer—a township constable; that on Saturday, the 7th of December, he served two summonses on Lassiter issued in favor of Wright, and these summonses were return-able that day before a Justice of the Peace, at which time judgments were taken amounting to about the sum of $265; that on the day following (Sunday) Lassiter sent to the town of Scotland Neck for Dunn, an attor-ney, to draw the deed of assignment; that Scotland Neck is in Halifax county, a distance of 16 miles and across the Roanoke River; that Jackson, the county seat of Northampton county, is only 11 miles; that Dunn went to Lassiter's that night, and Biggs, the surety on the Norman & Everett note, went with him, and the deed of assignment was drawn between twelve and one o'clock that night; that this deed was sent to Jackson that night and registered early next morning; that the land mortgaged as security of the Norman & Everet debt, for which Biggs was surety, was soon af-terwards sold and Biggs became the purchaser at the price of $1,000; that Lassiter has continued to live on this land ever since said sale and purchase by Biggs, without paying rent therefor.

The defendant contended in this Court that it was in-

cumbent on the plaintiff to show on the trial below that
the debts secured in the deed of assignment were *bona
fide*, or that he should have shown at least that there
were such debts as those named in the deed of assign-
ment, and cited *Feimester* v. *McRorie*, 34 N. C., 287,
and *Hodges* v. *Lassiter*, 96 N. C., 351, for this posi-
tion. There was no such position as this taken on the
trial below by prayer for instructions or by exception.
It is made here for the first time and should not be al-
lowed on that account. Exceptions cannot be made for
the first time in this Court. *Phipps* v. *Pierce*, 94 N.
C., 514; *Calvert* v. *Miller*, 94 N. C., 600; *Rodman* v.
*Harvey*, 102 N. C., 1; *Lindsey* v. *Sanderlin*, 104 N. C.,
331.

But it could not be sustained if it had been made.
The case shows that when Lassiter was on the stand as
a witness he was handed a paper, and he said: "The
paper handed me is the note I gave to Norman & Ev-
erett, referred to in the deed to Barber. It was for bor-
rowed money."

It also appeared that the debt of Wright, upon which
the judgments were taken and which the defendant
sets up and claims as his justification for seizing and
taking the property named in the trust and sued for in
this action, is a part of Lassiter's indebtedness named in
said deed of assignment. These facts appearing on the
trial answered the requirements of the law. It is not in-
tended that the debts named in the deed shall be shown by
the trustee to be *bona fide*. This would throw upon him
the burden of disproving fraud, which is contrary to the
general rule in issues of fraud, as shown by many de-
cisions of this Court. He that alleges fraud must prove
it. The assignee has only to show that there were *evi-
dences* of such indebtedness existing at the time of ex-

ecuting the assignment. *Feimster* v. *McRorie, supra.*
This was shown by the evidence of debt and judgment
under which the defendant claims to justify himself in
taking the property, and also, by the testimony of Las-
siter when he said "this is the note I gave Norman &
Everett, named in the deed of assignment. It was for
borrowed money."

It has been contended that it was incumbent on Bar-
ber, the trustee, to show the existence of all the debts
named in the deed, or, at least, that he should do this
as to the debts that would be paid in part or in full out
of the trust fund. This we do not understand to be the
rule. It is only required of the plaintiff to show a con-
sideration to support his legal title. And this is held to
be done when he shows the *evidence* of outstanding
debts. It is not necessary that he should show this as
to all the debts named in the deed, nor as to any partic-
ular debt. *Feimster* v. *McRorie, supra; Hafner* v. *Ir-
win,* 26 N. C., 529. But if the rule contended for, that
he must show the debt or debts that would be paid by
a sale of the property conveyed in the deed, obtained,
the plaintiff has done this by showing the existence of
the Norman & Everett note.

The defendant among other things prayed for and
asked the following instruction:

4. "That it is not necessary that the trustee Barber
should participate in any such alleged fraudulent intent
or have knowledge of it. It is sufficient to avoid the deed
if Lassiter alone was actuated by such intent."

As this seems to have been a general assignment by
Lassiter, an utterly insolvent debtor, for the benefit of
his creditors, this was a proper instruction and should
have been given, unless there was no such evidence of
fraud on the part of Lassiter as should have been sub-

BARBER v. BUFFALOE.

mitted to a jury.   *Woodruff* v. *Bowles*, 104 N. C., on page 197.

We are of the opinion that there was such evidence of fraud as should have gone to the jury.

Without recapitulating all the evidence bearing upon the issue of fraud, the fact that Biggs, the real party benefitted by the deed of the assignment, went with the attorney who drew the deed, across the Roanoke River, a distance of 16 miles, on Sunday night; that he bought Lassiter's home, mortgaged to secure the debt for which he was surety, and that he has allowed Lassiter to occupy it ever since without rent, taken in connection with the other evidence in the case, are such circumstances, in our opinion, as call for an explanation before a jury.   One element of fraud in such cases is benefit to the assignor.

There was error in not giving the defendant's fourth prayer, and also in the Court's directing the verdict of the jury.                        ·    .                        New trial.


DOUGLAS, J.:   I concur in the judgment in this case, but not in the argument.   The plaintiff's trustor, J. C. Lassiter, executed to the plaintiff a deed of trust conveying his stock of merchandise, with other personal property, to secure his creditors, preferring a debt for $2500 to Norman & Everett.   This preferred debt is admitted to be sufficiently large to absorb the assets after setting aside the lawful exemptions.   The defendant, acting as constable, seized the property under execution, which was taken back by the plaintiff under claim and delivery proceedings.

This cause has been twice before this Court, reported in 111 N. C., 206, and in 114 N. C., 228, on a petition to rehear.

The only difference as far as I can see between the case as now constituted and as it was on the former trial is that the preferred debt to Norman & Everett, the *bona fides* of which was then apparently admitted, is now contested.   This is a material difference, and throws the original burden upon the plaintiff to show the *bona fides* of the deed of trust under which he claims.   This he must do by showing the actual existence of the debts secured thereby, or at least of a sufficient amount in number or value to satisfy the jury that the deed was not intended as a colorable security for fictitious debts, but was made with the honest intent of securing real debts.   Every deed, whether in trust, or of absolute conveyance, requires an adequate valuable consideration to support it as against purchasers or creditors.   *Feimster* v. *McRorie;* 34 N. C., 287; *Hodges* v. *Lassiter,* 96 N. C., 351.   These authorities, along with numerous others, lay down the well established rule that such débts having been proved or admitted, the burden of proof then shifts to those seeking to attack the deed *aliunde*.   If the alleged fraud appears upon the face of the deed it becomes a question of law; but in the case at bar the deed of trust is admitted to be in all respects regular in form.   I think that the debts, whose validity must be shown, should belong to that class really intended to be secured, in this case being the debt of Norman & Everett which dominates the trust and absorbs the assets.   To hold such a deed valid simply because it professed to secure certain debts admittedly honest but postponed to a class beyond any possibility of payment, would be a judicial invitation to the perpetration of fraud.   As the burden rested upon the plaintiff to show the existence of the Norman & Everett debt, there was error on the

part of his Honor in *directing* a verdict upon the first issue. *Spruill* v. *Ins. Co.*, 120 N. C., 141, and cases therein cited.

Much of the defendant's argument involved practically a rehearing of the matters decided in the former opinion of this Court, which has already been once reheard. As far as that opinion applies to the case as now constituted, it is the law of the case, and I do not feel at liberty to review it. It should also be borne in mind that any opinion concurred in by a majority of the Court becomes the opinion of the Court, and remains the individual opinion of the justice delivering it only in so far as it may treat of matters not properly before the Court or not necessary to the determination of the case.