F. S. ROYSTER, trustee of J. R. Pender, v. W. L. STALLINGS, Sheriff of Edgecombe County.

(Decided February 28, 1899).

*Assignment, Deed of—Preferred Creditors—Badges of Fraud—False Promises.*

1. The debtor had the right (prior to the enactment of the Bankrupt Act, approved July 1, 1898), by a voluntary assignment to prefer one creditor over another, provided it was done merely for the purpose of giving the preference, and not for the purpose of hindering, delaying or defeating other creditors.

2. It is not the effect of the preference, but the *intent* with which it is made, that renders it fraudulent and void.

3. False promises to pay are evidence of bad faith, but are not to be classed among the usual badges of fraud, such as continuation of possession, or a secret trust, or some provision for the ease and comfort or benefit of the assignor, or the insertion of a feigned debt.

4. Where there is no evidence upon an issue, it ought not to go to the jury.

CIVIL ACTION, by the plaintiff, trustee, against the defendant, Sheriff, to recover possession of personal property described in the complaint and detained by the defendant by virtue of sundry executions in his hands upon judgments against John R. Pender, tried before *Norwood, J.,* at October Term, 1898, of EDGECOMBE Superior Court.

The plaintiff offered in evidence a deed of trust from John R. Pender to F. S. Royster, trustee, dated April 23, 1897, registered the same day at 4:15 P. M.

The answer specifies the executions in the defendant's hands against said Pender, levied the afternoon of the same day, but at a later hour than 4:15 P. M., on the property

claimed by plaintiff under the assignment, and the answer alleges that the deed of assignment was fraudulent and void as to creditors.

His Honor allowed the case to go to the jury upon the issue of fraud, over the objection of plaintiff; and the verdict being in favor of the defendant, judgment was rendered against the plaintiff, who accepted and appealed.

The issues, findings and evidence offered by defendant to invalidate the deed are stated in the opinion.

*Messrs. John L. Bridgers* and *Staton & Johnson,* for plaintiff (appellant).

*Messrs. G. M. T. Fountain* and *Gilliam & Gilliam,* for defendant.

FURCHES, J. Pender, an insolvent debtor, made an assignment of the property in controversy to the plaintiff, Royster, as trustee, for the benefit of creditors, in which he preferred a part of his creditors over' others. The defendant is the Sheriff of Edgecombe County, who levied upon and took said property into his possession by virtue of executions in his hands against said Pender. And this action is brought by the assignee, Royster, to recover possession of this property.

There had been attempt to assign this property by Pender to the plaintiff a few days before the assignment, now under consideration, was made, which failed for the reason that the assignor did not file the schedule of debts within five days from the date of its execution, as required by law; and this assignment was then executed, being an exact copy of the first assignment, except as to date.

The plaintiff offered in evidence the deed of assignment from Pender to him conveying the property in controversy,

and the schedule of debts, and the defendant, having admitted the possession of the property, the plaintiff rested his case.

The defendant admitted that the execution and registration of the deed of assignment to the plaintiff antedated his levies on the property, but contended that the deed of assignment was fraudulent and void as to creditors. He contended, first, that it was fraudulent on its face and should be so declared as a matter of law, for the reason that plaintiff did not put in evidence the schedule of debts. But this exception seems not to be true in fact, as it appears from the record that the schedule was offered in evidence. But if it should be held that the assignment is not fraudulent in law, he alleges that it is fraudulent in fact, and offered the following evidence to show that it is:

C. B. Mehegan, witness for defendant, testified as follows: "I remember when I heard deed of assignment was executed by Pender. I know that before he returned from a trip that he took, after executing the first deed, there were summons issued against Pender. I searched for an officer to serve summons. I found the township constable and took him to the depot. The train had not come. I saw Mr. Clarence Johnson, clerk of plaintiff, get on the train and go in the direction of Norfolk. Afterwards I saw Royster and Pender get off the train together; they came on the Norfolk and Carolina train. Johnson and Mr. Bridgers met Pender at the depot. They had a paper which Pender signed as soon as he got off the train. Hilliard Matthewson, Constable, was there and had summons. He was behind Johnson and Pender and I did not see what he did. Johnson was on a bicycle and passed me going down town rapidly. I carried the Constable down to the court-house. Just after this I went to carry my horse to the stable, and when I came back I saw

Johnson coming from the direction of the Register's office. After this I asked Pender what he had gone off for. He said he had gone to wait until things had settled down and to avoid the annoyance of these summons. I told him I had only inquired in reference to his not having filed his inventory. Hilliard Matthewson told me they had made him read all the summons and in this way got ahead of him."

The following evidence was offered:

Record of a judgment, bank of Tarboro v. Jno. R. Pender, docketed April 23, 1897, for $2,000. Record of judgment, John F. Shackelford v. John R. Pender, for $165, docketed April 23, 1897. Record of two judgments, Watkins, Cottrell & Co. v. John R. Pender, for $200 each, docketed April 23, 1897. Record of judgment, C. Billups & Co. v. John R. Pender, for $56.86, docketed April 23, 1897. Record of judgment of Kellogg Paint Co. v. John R. Pender, for $28, docketed April 23, 1897. Record of five judgments, Bank of Tarboro v. John R. Pender, for $200 each, docketed April 23, 1897. Record of judgment, C. B. Mehegan v. John R. Pender, for $84, docketed April 23, 1897. Judgment Mitchell Mfg. Co. v. John R. Pender, for $8, docketed April 23, 1897. Judgment of Shourting, Daily & Gates, for $38.75, docketed same date. Judgment Henry Walk v. John R. Pender, for $71.59, docketed same date. Judgment J. C. Mehegan, for $28.90, docketed same day. Judgment Duval & Reynolds, for $45.37, docketed same date. Two judgments Buck Stove and Range Co. v. John R. Pender, one for $197.22 and another for $190, docketed May 3, 1887. Judgment John T. Lewis & Bros. Co. v. John R. Pender, for $110.59, docketed June 9, 1897. Keen & Hagerty , judgment for $60.36, docketed June 9, 1897.

It is admitted by the defendants that these judgments were docketed subsequently, but immediately after the deed was filed for registration.

Hilliard Matthewson testified for the defendant: "I am Constable. I remember the time of the execution of the deed, but can not give the date. I had summonses against Pender in my hands. Mr. Mehegan put most of them in my hands. Most of them were in favor of the Bank of Tarboro. I went to the train that morning. I saw Clarence Johnson there. I went again about 12 o'clock. I went back to meet the afternoon train—N. & C. train. I saw Pender; he came from Rocky Mount. I saw Mr. Bridgers and Johnson there also. Mr. Bridgers called Pender, and they went into the operator's office together; I followed them; they had a paper. I read my summons to Pender. I don't know whether Pender signed any paper there. After I got back to town I saw Johnson in the court-house yard. I had to read all the summonses. Mr. Bridgers said read them all. I told Mehegan this."

L. V. Hart testified for defendant: "I was teller in the Bank of Tarboro in 1897. I presented a note of $200 to J. R. Pender for payment Saturday morning, April 17, 1897, before the registration of his first assignment. He told me that he would pay the note the first thing on Monday morning. I had four other notes of $200 each against him, but this was the only one due at that time. (Letter examined by witness dated 4-3-97.) It is on Pender's letterhead. This letter and signature are in Pender's handwriting, to best of my knowledge and belief. (Examined letter dated February 10, 1897.) The signature to this letter is in Pender's handwriting, to the best of my knowledge and belief. Both these letters are written to C. Billups & Son. (Witness examined a contract between J. R. Pender and the Bank of Tarboro, dated March 18, 1897.) The signature to this paper is Pender's to the best of my knowledge and belief."

J. F. Shackelford testified for the defendant: "I am President of the Bank of Tarboro. Bank had claims against Pen-

der when he made deed of assignment. I had instructed Hart to collect the $200 note from Pender. He told me that he had seen Pender and Pender had promised to pay it on Monday morning. On Monday morning Pender was absent from town."

Clarence A. Johnson testified for the defendant: "I was in the employment of Mr. Royster, the plaintiff, at the time the deed of trust was made and am still in his employ. Pender went off and returned April 23rd, the date of the second deed of trust. I went to the depot with Mr. Bridgers. I went to witness Pender's signature. Deed was executed at depot. I saw Matthewson, the Constable, there. I went back to town on bicycle and had deed registered. I did these things by direction of Mr. Bridgers, attorney for Pender. I went down to N & C. R. R. 50 miles to meet Pender, at the direction of Mr. Bridgers. I did not meet him."

CROSS EXAMINATION BY PLAINTIFF.

"I witnessed the deed at the depot. Mr. Bridgers told me that the first deed of trust was void because no schedule was filed, and that it was necessary to execute another. Mr. Bridgers told me to have the papers recorded right away and for that reason I made haste. I saw the Constable with papers for Pender at the depot, and after getting the second deed signed, I made haste for the Register of Deeds' office.

Exhibits "A," "B" and "C" offered in evidence.

It is agreed that the value of the property, exclusive of the exemptions, is $24,000.

(Witness acknowledges his signature to the three letters heretofore exhibited to the witness Hart, and now marked respectively Exhibits "A," "B" and "C." Also acknowledged to another letter marked "D.")

I was dealing with Billups and Co., buying from them. I

wrote to Billups that I would pay in sixty days' time, and they charged me cash and we had a disagreement." (Acknowledged telegram dated April 13, 1897, to Billups, Son & Co.).

The foregoing letters and telegrams were offered in evidence and read.

The plaintiff objected as being incompetent; objection overruled. Exception by plaintiff.

### EXHIBIT "B."

NORTH CAROLINA—Edgecombe County.

Whereas, J. R. Pender is indebted to Bank of Tarboro in the sum of one thousand dollars, carrying interest at six per centum from date, payable quarterly, for which he has this day executed and delivered to said bank his five notes of even date herewith, payable on demand; and whereas, said bank is willing to give time for the payment of said notes as follows, viz:—The first note to be paid with interest thirty days from date, and each note to be paid thirty days after the payment of the one number just prior to it—in each case the interest to be paid in full with note. Non-payment of any note when the thirty days expires voids the agreement and the notes to be due as on their face. It is also agreed that said Pender may pay these notes at any time before the times herein specified. By reason of the extending of the time of the payment of these notes said Pender hereby pledges his word that should any crisis arise in his affairs by which he would be pressed for money he will, in any and all events and under any circumstances, protect the Bank of Tarboro in the payment or securing the payment of these notes.

This March 18th, 1897.

G. M. T. FOUNTAIN,
J. R. PENDER.
*Attorney for Bank.*

EXHIBIT "A."

TARBORO, N. C., 2–10–97.

MR. C. BILLUPS, Norfolk, Va.

DEAR SIR: We here enclose check asked for. We agree with you that our action seems rather arbitrary, but you must admit that we had every reason to suppose we were to get the goods on sixty days when we ordered them. Don't be so hard on a young fellow who is working to build himself up; be more liberal. We are not going to rob you, we assure you. We are doing a nice business for cash only and by getting a little time we can do more. I hope that when you were young you had more to start with than I did. However, our wants will be few, and we will always in future expect to pay for goods on receipt of invoice and will always send check. We much prefer sending check to having you draw. The bank seems to take a great delight in returning papers. We would have paid the draft when due, but when boy called we were out and never saw it.

Yours truly,          J. R. PENDER.

EXHIBIT "C."

TARBORO, N. C., 4–3–97.

C. BILLUPS, SON & CO., Norfolk, Va.

GENTS:—We are very sorry indeed you could not accept the note we sent you. We will send you check on 10th for the entire account. We trust this will be satisfactory.

Yours truly,          JNO. R. PENDER.

Of course if this is not entirely satisfactory we will do as you demand. Next week being first, we will make good collections.

EXHIBIT "D."

TARBORO, N. C., 3–29–1897.

C. BILLUPS, SON & CO., Norfolk, Va.

GENTS:—Please find enclosed note due in 25 days for $57.21. Kindly accept this and greatly oblige me. Should you be unwilling, we will, of course, do as you may require.

Yours truly,  JNO. R. PENDER.

TELEGRAM.

TARBORO, N. C., April 13th, 1897.

C. BILLUPS, SON & CO., Norfolk, Va.

Check by to-morrow's mail.

JNO. R. PENDER.

"I left Monday morning about 7 o'clock, after making the first deed of assignment. One of my notes to the bank was presented to me on the evening of April 17th, 1897. I had executed the deed before this was presented to me, but had not recorded same.

RE-DIRECT EXAMINATION.

"I could not make the collection that I expected in order to pay the Billups note. I thought I had sufficient assets to protect the bank and any debt that I preferred. I thought all of my creditors could be paid out of my stock of goods."

The following issues were submitted to the jury:

1. "Was the deed executed to defraud, hinder and delay the creditors of John R. Pender?" Ans. "Yes."

2. "Is the plaintiff the owner of the property as alleged in the complaint?" Ans. "No."

3. "What is the value of the property?" Ans. "$2,400."

The burden of the first issue was upon the defendant, and according to the view we take of the case this is the only issue necessary to be considered. We have copied the whole of defndant's evidence and do not think it proves, or tends to prove, in a legal sense, that said deed is a fraudulent one.

It is true that under this deed some of the creditors of the assignor, Pender, will be paid in full, while other creditors will get little or nothing on their debts. This is the result of all such assignments where the assignor is insolvent. But this does not make the assignment fraudulent, as understood in law, and make it void under the statute. The debtor has the right to prefer one creditor over another if he sees proper to do so, provided he does this for the purpose of giving a preference to a part of his creditors, and not for the purpose of hindering, delaying or defeating other creditors. It is not the effect that may result from the terms of the trust in preferring one creditor over another, but the *intent* with which it is made, that renders it fraudulent and void. It is the intent of the maker to hinder and delay his creditors that contains the virus of destruction.

It is true that courts and juries can not see and know the intent of an assignor except from his words and acts. Where he expresses his intent—his purpose to be—to defraud his creditors, we need not look further. This will avoid the assignment. But if he has not so declared his purpose, then we have to look to his acts to ascertain the intention with which the assignment was made—to what are called the "badges of fraud."

We have many cases in our Reports defining what are "badges of fraud" under the statute (The Code, section 1545,) and what are not. And as we are of the opinion that there is no evidence—no badges of fraud—it will be proper for us to state what are not badges of fraud, as well as to state what are the usual badges of fraud.

An assignor may prefer one creditor to another without committing fraud. *Moore v. Hinnant,* 89 N. C., 455; Bump on Fraudulent Con., 218; *Hafner v. Irwin,* 23 N. C., 490. To do so is not fraud. To avoid an assignment it is absolutely necessary that there should be evidence of a fraudulent *intent* on the part of the assignor, and the fact that some of the creditors are preferred to others is no evidence of such intent. The usual badges of fraud are continuation of possession, or a secret trust, or some provision for the ease and comfort or benefit of the assignor, or the insertion of some feigned debt not due by the assignor. This cause has none of these badges.

The latest expression of this Court on this subject is *Barber v. Buffaloe,* 122 N. C., 129. In that case it was held that there was sufficient evidence of fraud to take the case to the jury. But that was a much stronger case than this. There the party preferred was a relation of the assignor —went 16 miles on Sunday night with the attorney who drew the deed of assignment—bought in the property with the debt secured, and allowed the assignor to remain in possession free of rent. This was evidence of a secret trust and benefit to the assignor, and the turning point in the case, and distinguished it from the same case when before this Court at a former term (111 N. C., 206).

The facts in this last case (111 N. C., 206,) are very much the same as those in the case now being considered. They are as strong, and in our opinion stronger, and they were held in that case not to be sufficient evidence of fraud to carry the case to the jury.

There is an abundance of evidence in this case of promises to pay on the part of Pender, that were not kept. Some of them may have been made to keep off his creditors as long as

124—5

he could. But these false promises to pay are not badges of fraud, but of bad faith.

It is evident that there was quite a race between the plaintiff and the defendant as to the execution and registration of the deed of assignment and the levy of the executions, in which the plaintiff won. But this is no badge of fraud. *Barber v. Buffaloe,* 111 N. C., 206. There is no allegation but what the debts preferred in the assignment were just debts, due by the assignor, Pender.

We do not like to say there was no evidence, after the matter has been submitted to a jury, and they have said by their verdict that there was sufficient evidence upon which to find a verdict, as we think cases are sometimes taken from the jury when they should have been submitted to them. But when we find, as in this case, that the issue has been submitted to the jury without evidence, it is our duty to say so. *Trumbull v. Gibbons,* 22 N. J. Law, 149.

There were some exceptions as to evidence, but these are not tenable and are not sustained.

New trial.