JOHN H. FERREE, et al. v. JOHN W. COOK.

*Action of Claim and Delivery—Fraudulent Conveyance—
Burden of Proof—Bill of Sale—Subsequent Insertion
of Other Property Without Noted Change of Consid-
eration—Conveyance as Security—Erroneous Rejection
of Testimony Cured by Admission of Fact Intended
to be Proved—Instructions.*

1. In the trial of an action of claim and delivery of personal
   property, in which defendant alleges that the bill of sale
   under which plaintiff claims is fraudulent, the burden is
   upon the defendant to prove the fraud, unless the instrument
   is fraudulent upon its face, or enough appears therein to
   raise a presumption of fraud; and a finding by the jury that
   such bill of sale is not fraudulent will not be disturbed unless
   based on improper evidence or erroneous instructions.

2. The erroneous rejection of testimony on a trial is cured by a
   subsequent admission of the fact attempted to be proved
   thereby.

3. Where, in the trial of an action of claim and delivery of personal
   property, to which the defense was that the bill of sale under
   which plaintiffs claimed was fraudulent, it appeared that the
   grantor, after executing the bill of sale for certain property
   upon a recited consideration of $4,000, the estimated value of
   the property, agreed to include other property if the grantees
   would assume and pay other debts of his for which they were
   sureties and did subsequenlty insert such other property in
   the instrument without changing the recited consideration;
   *Held,* That it was not error to refuse an instruction that, if
   plaintiffs and the grantor in the bill of sale agreed on a con-
   sideration of $4,000 for the transfer of certain personal prop-
   erty and subsequently other property was inserted in the
   bill of sale without change of consideration, the instrument
   was fraudulent.

4. An insolvent debtor may, in good faith, pay one or more of his
   creditors, though nothing remains for his other creditors.

119—11

5. Although an insolvent debtor, in selling his property to a creditor in payment of a debt, may have the intent to secure a benefit to himself, or to hinder, delay or defraud his other creditors, the transaction will be upheld if the creditor who is paid does not participate in or know of the debtor's fraudulent purpose.

6. The refusal to give an instruction not warranted by the testimony is not error.

ACTION OF CLAIM AND DELIVERY, tried at July, 1895, Special Term of GUILFORD Superior Court, before *Boykin, J.*, and a jury. The action was brought by the plaintiffs, claiming to be the owner and to have right of recovery of the property named in the complaint, under a bill of sale made to them by one L. F. Ross. The defendant admitted the taking and holding the same, and justified the same on the ground that said bill of sale was fraudulent and void as to creditors, that he had levied upon and held the property as sheriff, under and by virtue of the authority of three several warrants of attachment against the said Ross. In the course of the trial when Newell, a witness on the part of the plaintiff, was under examination, the defendant, in support of his defense, proposed to show by him that L. F. Ross, on the day, and just a few days before, the making of the bill of sale under which the plaintiffs claim, told him that he was insolvent, and on objection by plaintiffs his Honor excluded the evidence, to which defendant excepted.

In the course of the argument to the jury the counsel for plaintiff admitted that L. F. Ross was insolvent, and in the charge to the jury the Court called the attention of the jury to this admission, and stated that there was no denial that he was insolvent.

The plaintiffs, in support of their claim to the property in suit, introduced George S. Bradshaw, who testified that

he went to Mt. Airy on Monday, the 14th day of August, 1893, at the instance of R. R. Ross, with him and J. H. Ferree, and that he drew the bill of sale at Mt. Airy, partly that night and partly on the next morning, L. F. Ross, J. H. Ferree and himself being present at the time.

Witness stated that R. R. Ross and Ferree had told him they were going to Mt. Airy to make a trade.

At the writing of the bill of sale L. F. Ross had a memorandum from which he read, and witness said the prices were not discussed, and that he did not know the price of any article contained in the deed or bill of sale. They discussed the condition of L. F. Ross, and Ferree advised that a corporation be created called the Hamburg Cotton Mills, and that the cotton mill of L. F. Ross be conveyed to it, and that L. F. Ross sell out all his buggies, carts and wagon business at Greensboro, and that in this way he might be able to tide over financial trouble ; that he wrote out that night, from 8 to 10 o'clock, the bill of sale so far as the enumeration therein of the buggies, carts, wagons and other things at Greensboro extended, making an aggregate of $4,000, and that Ferree and R. R. Ross found out that certain notes which they assumed to pay, including the sum of $750 which L. F. Ross owed Matthews, exceeded the said sum of $4,000 by the sum of $250, and they then on the next morning wanted L. F. Ross to put in something else, who yielded to their request, and he then put into the deed the two mules and wagon and harness and just after that Ferree asked L. F. Ross if he did not have some hosiery mill stock amounting to $5,000, and on learning that he had but that the same was claimed by Mr. Gwynn as under a lien to him for $3,000, Ferree urged that as he and R. R. Ross were on other paper for him he ought and should put it in the bill of sale, and that if he would so do,

he and R. R. Ross would carry out his contract with said Gwynn and apply enough of the balance after settling the Gwynn claim to pay off two notes for which they were bound at the High Point Bank for $500 each as sureties of said L. F. Ross, and nothing was said as to what was to be done with the balance and no price or value was fixed on said hosiery mill stock.    That as soon as the bill of sale was finished and signed it was discussed as to its registration, and it was agreed that the same should be put on record in Greensboro as soon as possible, and Ferree at once, on the first train, came off with the same, leaving Bradshaw and R. R. Ross s+ill at Mt. Airy ; but before he left the incorporation of the new company, the Hamburg Cotton Mills, to take the title of the mill property was discussed and Ferree advised Bradshaw to take stock in it, and he, the said Ferree, and R. R. Ross, both concurred that the incorporation be had before any creditor could get judgment, and after Ferree left the articles of incorporation were carried over to Dobson, with the intention and understanding that the proposed stockholders would meet on Tuesday of the week next after, and before they could so meet the attachments against L. F. Ross were issued and levied, and that defeated the project of the new corporation.

R. R. Ross, one of the plaintiffs, testified that he saw Ferree and arranged with him to go together to Mt. Airy on Monday, the 14th of August, 1893, and that he procured Bradshaw, who was a lawyer, to accompany them, and that they accordingly went that day, and on their arrival at Mt. Airy he went to his brother's house, L. F. Ross, and Bradshaw and Ferree went to the hotel, and at the hotel that night the trade was made and the bill of sale was begun and partly written.

Witness testified that L. F. Ross did not have the invoices

or bills, but a memorandum merely, and that he claimed that the buggies and entire business at Greensboro was worth $4,000; that witness and said Ferree agreed to take it at said sum and pay therefor by paying certain notes on which they were surety for him, the said L F. Ross, which were mentioned, aggregating $3,500, and pay Matthews the sum of $750, and on the next morning, on seeing that they had agreed to pay $250 more than the $4,000 L. F. Ross put in the two mules, wagon and harness, which were then in his possession at Mt. Airy, and the same was then entered in the bill of sale; and just after that the $5,000 of hosiery mill stock was inserted in the bill of sale without any price or value fixed and agreed on for the said shares of stock, and without any additions on that account to the consideration expressed by the bill of sale, except the payment of the two $500 notes they were sureties on for L. F. Ross.

This witness swore that they agreed to pay the $4,000 expressed in the bill of sale for the buggies and other things at Greensboro, and as to the hosiery mill stock, they agreed to carry out the contract of L. F. Ross with Gwynn as to $3,000, part of said stock, and if there was anything more got out of it they would apply it to the two notes held by the High Point bank for $500 each, to which they were sureties, and nothing whatever was said or agreed on as to what was to be done with the surplus, if any.

On cross-examination the witness, R. R. Ross, admitted that he knew his brother was considerably in debt, and he thought not more than fifty or sixty thousand dollars, and he testified that he told Ferree that his brother had told him he could not pay the notes and that he had not and

could not pay for the buggies, &c., and he further said that he and Ferree went to Mt. Airy to see if they could save themselves.

Witness said they had not the invoices or bills at the time the bill of sale was drawn, but a memorandum made by L. F. Ross and that they took L. F. Ross's word as to the cost of the articles, and he admitted that in a conversation with Matthews in regard to the Hosiery Mill Stock he said if he and Ferree get enough out of it to settle with Gwynn and pay the two notes to the High Point Bank they were willing to let Ross have the balance.

The witness, J. H. Ferree (one of the plaintiffs) testified that R. R. Ross came to him and told him that his brother, L. F. Ross, wanted to sell out his buggy business, and that he had told his brother that he would see him, the witness, and if he and R. R. Ross should think of buying they would go to Mt. Airy on the following Monday ; and they went accordingly, and when they got to Mt. Airy witness that evening looked at the cotton mill, and after supper L. F. Ross and R. R. Ross came to the hotel where witness was stopping, and there they made the trade at $4,000, of which they were to pay the sum of $3,500 at bank on notes on which they were L. F. Ross' sureties and $750 to Matthews due by L. F. Ross, and L. F. Ross put in the mules and waggon and harness for the excess.

After all this was agreed on witness said he knew L. F. Ross was owing him and R. R. Ross more than this, they being sureties on two certain notes of $500 each in High Point Bank, and he asked him if he could not give him something more, and to this L. F. Ross answered that he had $5,000 of Hosiery Mill stock, but that it was encumbered for $3,000 in favor of Gwynn, but he would turn it over to witness and R. R. Ross, if they would protect Gwynn, and to this they assented, and the whole of said

stock was then inserted in the bill of sale, and the stock was at once turned over to them, and afterwards wit. ness and R. R. Ross turned over the same stock to said Gwynn, on his agreement to pay them $1,000 in tobacco for the same, which he never did, and that the Hosiery Mill stock had no market value then.

Witness also testified that in April or May next before the execution of the bill of sale, he received, and still had in hand at the execution of the bill of sale, two notes depos. ited by L. F. Ross as collatteral to indemnify him as his surety, one on Leach for $2,000, on which he had realized $1,300, and the other for $500 on Livermore which he had collected, but these sums were applied to other notes than those due at the time of the sale that they were sureties on for Ross.

The plaintiff read in evidence to the jury their bill of sale from Ross.

It was in evidence, on the part of defendant, and not contested by the plaintiff, that L. F. Ross at the execution of the bill of sale, was greatly embarrassed and not able to pay his debts, and since then had been sold out under mortgages and executions, and his property had proved insufficient to pay the mortgages on the same, leaving the attaching creditors and others without anything to pay their claims.

Two issues were submitted, the first relating to the ownership of the property, and the second to the value of the property at the time of seizure.

The defendant asked the Court for the following instructions:

" 1. If the jury shall find that the bill of sale executed by L. F. Ross was so executed with the intent to hinder, delay or defraud his creditors or to secure a benefit to himself, the burden is upon the plaintiffs to show that a

consideration actually passed in the shape of money paid, something of value delivered or the discharge of a debt actually due from L. F. Ross to them, and that they acted in good faith.

"2. If the jury shall find that L. F. Ross executed said bill of sale with such intent to hinder, delay and defraud creditors or to secure a benefit to himself, and that plaintiffs participated in his purpose, or knew of his intent at the time, though the consideration may have been a pre-existing debt, it is their duty to find that said bill of sale was executed to defraud creditors.

"3. The notice or knowledge of L. F. Ross's fraudulent intent on the part of plaintiffs does not mean that they must know as a matter of law that said bill of sale was fraudulent, but did they know the circumstances which the law says makes the transaction fraudulent, if it was so, on the part of L. F. Ross (which have been explained), and if they did know of such circumstances the jury will find that said sale was fraudulent and that plaintiffs are not entitled to recover.

"4. Even if the plaintiffs paid a full price for the property conveyed in said bill of sale, yet, if the jury shall find that they purchased with the intent to aid L. F. Ross to defeat his creditors or any of them, or to secure a benefit to himself, their purchase is void, and the jury will answer that plaintiffs are not entitled to recover.

"5. If the jury shall find as a fact that the plaintiffs and L. F. Ross agreed upon the sum of $4,000 as the consideration for the transfer of the buggies, carts, wagons and harness, and that subsequently other property, mules and wagon and harness and hosiery-mill stock and notes were inserted in the bill of sale without change of con-

FERREE *v.* COOK.

sideration, such insertion of property being without consideration was fraudulent, and hence plaintiffs would not be entitled to recover.

" 6. If the jury shall find that the bill of sale was executed in whole or in part as a security, and not as an absolute sale of property, then the same is in law fraudulent and void, and the plaintiffs are not entitled to recover.

" 7. The plaintiffs having testified that the hosiery-mill stock was inserted in the bill of sale as a security, the same was fraudulent, and the jury will answer the first issue, 'No.' "

The Court gave all the prayers, save the 5th and 7th. Defendant excepted to refusal of the court to charge as requested in those prayers.

It was admitted by plaintiffs' counsel, and the admission was called to the attention of the jury, that L. F. Ross was insolvent.

His Honor explained the contentions of the parties to the jury and, among others, instructed them as follows: "That an insolvent debtor had the right to pay one or more of his creditors, though it resulted in not having enough property left to pay his other creditors, but the transaction must be *bona fide*, without intent to hinder, delay or defraud his other creditors or any one of them, and without purpose to secure a benefit to himself; and although a debtor did sell his property to a creditor as a payment of his debt, in order to secure a benefit to himself or with the intent to hinder, delay or defraud other creditors, still the law will uphold the contract unless the creditor participated in his purpose or knew of his intent at the time.

" That a conveyance of property absolute upon its face, but intended as a security for a liability, is fraudulent and void as to creditors.

" It being admitted that L. F. Ross was insolvent at the time of the execution of the bill of sale, the jury should inquire, first, if he intended by said transfer of his property to the plaintiffs to hinder, delay or defraud any of his creditors or to secure a benefit to himself; second, if he did so intend, did the plaintiffs participate in his purpose or know of his intent; third, was the alleged consideration for the transfer of said property reasonably fair and just; fourth, whether the bill of sale was executed, in whole or in part, as a security or as an absolute sale of the property.

" If the jury finds that L. F. Ross conveyed the property to the plaintiffs with the intent to hinder, delay or defraud any of his creditors, or to secure a benefit to himself, and shall also find that the plaintiffs participated in his purpose and knew of his intent, then the conveyance was fraudulent and void, and the plaintiffs cannot recover, and are not the owners of the property; or, if the jury shall find that the bill of sale was executed in whole or in part as a security, and not as an absolute sale of the property, then the same is in law fraudulent and void, and the plaintiffs are not the owners of the property and are not entitled to recover.

" But if the jury shall find that L. F. Ross conveyed the property in good faith for a reasonable, fair consideration, without any intent to secure a benefit to himself, or to hinder, delay or defraud any of his creditors, or if he did so with such intent and purpose, if the plaintiffs did not participate in such purpose, or know of such intent, then the plaintiffs are entitled to recover and are the owners of the property, unless the conveyance and transfer of the property was made, in whole or any part thereof, as a security.

" If the conveyance and transfer of the property was made, in whole or in part, as a security, then the same is

FERREE *v.* COOK.

void and fraudulent as to creditors, and the plaintiffs are not the owners of and are not entitled to recover the same."

There was a verdict for the plaintiffs; prayer for judgment by the plaintiffs; motion for new trial by the defendant for refusal by his Honor to give defendant's fifth and seventh special instructions, and for error in excluding the proposed evidence of witness Newell as to declarations of insolvency by L. F. Ross. Motion denied, and judgment for plaintiffs, from which defendant appealed.

*Mr. J. T. Morehead*, for plaintiff.
*Messrs. Dillard & King, R. M. Douglas* and *Shepherd & Busbee*, for defendant (appellant).

FURCHES, J.: This is an action for the possession of personal property, and comes to this Court on the appeal of defendant. Plaintiffs claimed title under a bill of sale bearing date August 15, 1893, which defendant alleged was fraudulent, as to creditors under whom he claimed, being intended to hinder and delay the creditors of L. F. Ross from collecting their debts. And further, that this transaction between L. F. Ross and the plaintiffs was not an absolute sale, but in fact an assignment to secure plaintiffs as his sureties, and was, therefore, a fraud on the registration law, and void on that account.

It is not contended by the defendant that the bill of sale contains such evidence of fraud on its face that it was the duty of the court to declare it void, as a matter of law. Nor is it contended that sufficient appears on its face to create a presumption of fraud, which must be rebutted by the plaintiffs. *Cheatham* v. *Hawkins*, 76 N. C., 335; S. C., 80 N. C., 161; *Booth* v. *Carstarphen*, 107 N. C., 395; *Cowan* v. *Phillips*, at this Term. This being so, it devolved

FERREE *v.* COOK.

on the defendant to establish the fraud.    And this was a question of fact for the jury, and the jury has passed upon it, and found there was no fraud.    This ends the case, unless this finding was based upon improper evidence, or erroneous instructions from the court.

There is but one exception to evidence assigned as error, and that is that the defendant was not allowed to prove that " Ross told witness (Newell) that he was insolvent." This exception was virtually abandoned on the argument, and it was admitted on the trial that he was insolvent. So we see no ground upon which it should be sustained.

The defendant's only other exception is that the court declined to give his 5th and 7th prayers for instruction, which are as follows :

" 5.  If the jury shall find as a fact that the plaintiffs and L. F. Ross agreed upon the sum of $4,000 as the consideration for the transfer of the buggies, carts, wagons and harness, and that subsequently other property, mules and wagons and harness, and hosiery mill stock and notes, were inserted in the bill of sale without change of consideration, such insertion of property being without consideration was fraudulent, and hence the plaintiff would not be entitled to recover."

" 7.  The plaintiffs having testified that the hosiery mill stock was inserted in the bill of sale as a security, the same was fraudulent, and the jury will answer the first issue ' No'."

This case discloses the fact that the plaintiffs, Ferree and R. R. Ross, were the sureties of L. F. Ross for considerable amounts, over and above $4,000, the estimated value of the property L. F. Ross at first agreed to sell them; that he afterwards agreed with the plaintiffs that, if they would agree to pay other debts for which they were his sureties, and to assume a liability of his to one Gwynn, he

FERREE *v.* COOK.

would sell them other property, which was then inserted in the bill of sale. The evidence in the case tends to establish this state of facts, and in our opinion justified the court in declining to give the defendant's fifth prayer.

We fail to find that the seventh prayer is sustained in fact. There may be sufficient evidence for the defendant to argue that the hosiery mill stock was inserted as a security. But we do not find that the plaintiffs testified that it was. This being so, the defendant's exception to the court's refusing to give this prayer must fail.

Whatever might be our opinion if we were sitting as a jury, we find no error of law committed by the court on the trial. The defendant's prayers for instruction, and the judge's charge, (which the reporter will set out in full,) show that the defendant has no cause to complain of the court in this trial. Failing to find error, the judgment is affirmed.

Affirmed.